41 So.2d 597
TAXPAYERS AND CITIZENS OF CITY OF MOBILE v. BOARD OF COMMISSIONERS OF CITY OF MOBILE.

I Div. 370.

Supreme Court of Alabama.

June 23, 1949.

447

Mitchell & Pershing, of New York City, and Harry Seale, of Mobile, for appellee.

Carl M. Booth, State Solicitor, of Mobile, for appellants.

STAKELY, Justice.

This is an appeal from a decree rendered by the Circuit Court of Mobile County, in Equity, validating and confirming a proposed issue of $5,000,000 Tunnel Revenue Refunding and Improvement Bonds of the City of Mobile and all proceedings taken in connection therewith, the means provided for the payment of the bonds including all pledges of revenues and also validating and confirming the covenants and provisions contained in the resolution adopted by the appellee authorizing the issuance of the bonds. This proceeding was instituted by the appellee by filing its petition for validation under the provisions

448

of §§ 169 to 176, inclusive, Title 7, Code of 1940. The aforementioned decree contains the following special finding of facts all of which are justified and shown by the record and evidence in the case.

"1. That said Petition for Validation was filed in this Court on the 29th day of March, 1949.

"2. That on the 29th day of March, 1949, an order was entered by Cecil F. Bates, Judge of the Circuit Court of Mobile County, ordering that the taxpayers and citizens of the City of Mobile show cause, if any they have, on the 25th day of April, 1949, at the hour of 11 o'clock, A.M. of said day, at the Circuit Court Room in the Court House in the City of Mobile, in the County of Mobile, why this Court should not validate and confirm:

"(a) said $5,000,000 City of Mobile Tunnel Revenue Refunding and Improvement Bonds, dated May 1, 1949, maturing November 1, $100,000 in each of the years 1950 to 1952, inclusive, $110,000 in 1953 and 1954, $120,000 in 1955 and 1956, $130,000 in each of the years 1957 to 1959, inclusive, $140,000 in 1960 and 1961, $150,000 in 1962, and $3,420,000 in 1978, as provided for in the Resolution adopted by the Board of Commissioners of the City of Mobile on the 22nd day of February, 1949;

"(b) all proceedings had and taken in connection with said Resolution authorizing the issuance of said bonds;

"(c) the authority of the City to construct the Approach Facilities as authorized by the Resolution;

"(d) the pledge by the City of the revenues of the tunnel heretofore constructed by the City under the Mobile River from a point at or near the intersection of Government Street and St. Emanuel Street in the City to a point on Blakely Island connecting with the old Spanish Trail (after making provision for the payment of the current expenses of maintaining, repairing and operating the tunnel, including the tunnel plaza as improved and enlarged, and reserves for such purposes) to the payment of the principal of and the interest on said bonds; and

"(e) all covenants of the City and all other provisions contained in the Resolution authorizing the issuance of said bonds.

"3. That pursuant to the provisions of Act No. 196 of the General Laws of Alabama, 1935 (Title 7, Sections 169 to 176, inclusive, of the Code of Alabama of 1940), the Register of this Court, published in the Mobile Register, a newspaper printed and published in the City of Mobile and of general circulation in said City, once a week for three successive weeks (the first publication having been made on April 1st, 1949, which date was more than 18 days before April 25, 1949, the date set by the order of Cecil F. Bates, Judge as aforesaid, for the hearing of said cause; the second publication having been made on April 8, 1949, and the third publication having been made on April 15, 1949), a notice addressed to the taxpayers and citizens of the City of Mobile requiring them at the time and place specified in said order providing for the said hearing of said cause, to wit, April 25, 1949, to show cause, if any they have, why the said bonds and the said proceedings and the other matters set forth in paragraph 2 of these Findings of Fact should not be validated and confirmed by this Court.

"4. That a copy of said Petition and said Order of said Cecil F. Bates, Judge as aforesaid, was duly served upon Honorable Carl M. Booth, State Solicitor in and for the Thirteenth Judicial Circuit, County of Mobile, State of Alabama, on the 29th day of March, 1949, and that the said Honorable Carl M. Booth acknowledged in writing service of said Petition and Order upon him upon the date aforesaid, which acknowledgement of service has been filed in this cause.

"5. That the said Honorable Carl M. Booth, State Solicitor for the Thirteenth Judicial Circuit, County of Mobile, State of Alabama, filed in this Court on the 28th day of April, 1949, Pleas in Abatement, Demurrer and Answer to the said Petition.

"6. That no citizen or taxpayer has filed any appearance in said cause or appeared at the time set for the hearing of

said Petition to show cause why said Petition should not be granted.

"7. That the City of Mobile (hereinafter sometimes called the 'City') is a municipal corporation situated in Mobile County, in the State of Alabama, and duly incorporated and existing under the laws of the State of Alabama, and that the Board of Commissioners of the City of Mobile, Alabama (hereinafter sometimes called the 'City Commission'), is the governing body of said City. That the City has a population of 78,720 according to the Federal Census of 1940.

"8. That under the authority of the Municipal Revenue Bond Act of 1935 (Title 37, Sections 341 to 352, inclusive, of the Code of Alabama of 1940), and a resolution duly adopted by the City Commission on June 20, 1939, entitled:

" 'A resolution authorizing the construction of a tunnel under the Mobile River and the issuance under the provisions of the Muncipal Revenue Bond Act of 1935, of City of Mobile 4% tunnel revenue anticipation bonds, payable solely from tunnel earnings, to finance in part the cost of such construction; prescribing tolls and charges for the facilities to be furnished by such tunnel; providing for the creation of certain funds; and providing for the remedies of the holders of said bonds',

"which resolution was supplemented and amended by a resolution duly adopted on July 19, 1940, the City of Mobile constructed a tunnel under the Mobile River from a point at or near the intersection of Government Street and St. Emanuel Street in the City to a point on Blakely Island connecting with the old Spanish Trail (U. S. Highway No. 90) and, for the purpose of financing in part the cost of construction of the tunnel (the balance of such cost having been financed by a grant from the Federal Government), the City duly issued its tunnel revenue anticipation bonds in the aggregate principal amount of $2,600,000, dated May 1, 1939, bearing interest at the rate of 4% per annum payable semi-annually on the first days of May and November in each year, maturing on May 1, 1969, and redeemable on any interest payment date prior to maturity (hereinafter sometimes called the 'original bonds').

"9. That the tunnel was constructed by the City in accordance with engineering plans and specifications which were prepared and adopted many months prior to the issuance of the original bonds and the tunnel was opened for traffic on February 20, 1941.

"10. That because of the steady increase in traffic in the City from about the time the construction of the tunnel was started, which could not possibly have been foreseen at the time of preparing the original engineering plans and specifications for the tunnel, the number of vehicles using the tunnel greatly exceeded the original estimates, and this unforeseen increase concentrated traffic on those streets which are used in traveling to and from the western portal to the tunnel and created traffic congestion in the City which became a serious menace to the health and safety of the inhabitants of the City and to the proper functioning of the police and fire departments of the City.

"11. That the City Commission determined that, because of the foregoing facts and circumstances relating to traffic to and from the tunnel, it was necessary, in order to provide properly for the flow of tunnel traffic through the City, to construct (i) certain improvements and enlargements of the plaza at the western portal of the tunnel, and (ii) certain street improvements, all constituting approaches to and integral parts of the tunnel.

"12. That for the purpose of financing the cost of constructing said improvements and enlargements of the tunnel plaza and said street improvements and of refunding all of the original bonds then outstanding, the City duly issued, under the authority of the Municipal Revenue Bond Act of 1935 and a resolution duly adopted by the City Commission on March 20, 1943, entitled:

" 'A resolution authorizing the construction of certain improvements of the Bankhead Tunnel which constitute integral parts of the original tunnel project and are necessary to provide adequate approach facilities for tunnel traffic; authorizing

the issuance of tunnel revenue anticipation bonds, payable solely from tunnel revenues, to refinance the outstanding tunnel revenue anticipation bonds, including the redemption premium thereon, and to pay all or a part of the cost of constructing such improvements; providing that the tunnel revenue anticipation bonds issued under the provisions of this resolution shall not constitute a debt of the city or a pledge of its faith and credit and that no holder of such bonds shall ever have the right to compel any exercise of the taxing power of the city or the appropriation of any funds other than such revenues to pay such bonds or the interest thereon; providing for the fixing and collecting of tolls and charges for the use of the tunnel; providing for the creation of certain funds; and setting forth the rights and remedies of the holders of such bonds',

"which resolution was amended and supplemented by a resolution duly adopted on April 29, 1943 (said resolutions being hereinafter sometimes collectively called the '1943 Resolution'), its tunnel revenue anticipation bonds in the aggregate principal amount of $3,500,000, designated 'City of Mobile Tunnel Revenue Anticipation Bonds', consisting of 3,500 bonds of the denomination of $1,000 each, numbered 1 to 3,500, inclusive, dated as of the 1st day of April, 1943, $1,500,000 of said bonds (called 'serial bonds'), consisting of bonds numbered 1 to 1,500, inclusive, maturing annually, in numerical order, lowest numbers first, as follows: $75,000 on May 1 in each of the years 1945 to 1949, inclusive, $100,000 on May 1 in each of the years 1950 to 1954, inclusive, and $125,000 on May 1 in each of the years 1955 to 1959, inclusive, and the remaining $2,000,000 bonds (called 'term bonds') maturing on May 1, 1969, the term bonds being redeemable in part, when selected by lot, on any interest payment date not earlier than May 1, 1948, and all of the bonds at any time outstanding (both serial bonds and term bonds) being redeemable in whole at any time not earlier than May 1, 1948, from any moneys which may be made available for such purpose, such redemption to be made at the principal amount of the bonds to be redeemed and accrued interest, together with a premium

of 4% if redeemed on or prior to May 1, 1951, 3% if redeemed thereafter and on or prior to May 1, 1956, 2% if redeemed thereafter and on or prior to May 1, 1960, 1% if redeemed thereafter and on or prior to May 1, 1964, and without premium if redeemed thereafter, and the proceeds of said bonds, over and above the amount required for refunding all of the original bonds, were deposited to the credit of the special fund created by said resolution adopted on June 20, 1939 and designated 'Mobile Tunnel Construction Fund' (therein and herein sometimes called the 'Construction Fund').

"13. That the interest on said Tunnel Revenue Anticipation Bonds has been paid as the same became due and payable; all of the serial bonds of said issue which have heretofore matured, aggregating $300,000 in principal amount, were paid at their respective maturities and term bonds aggregating $807,000 in principal amount have been retired by purchase or by redemption; and all of the remaining Tunnel Revenue Anticipation Bonds (herein sometimes called the 'outstanding bonds'), aggregating $2,393,000 in principal amount, are now outstanding and unpaid, the serial bonds which mature in the years 1949 and 1950 bearing interest at the rate of 4% per annum and the remaining outstanding bonds bearing interest at the rate of 3½% per annum, such interest being payable semi-annually on the 1st days of May and November in each year, and both the principal of and the interest on the outstanding bonds being payable at the principal office of Chemical Bank & Trust Company, in the Borough of Manhattan, City and State of New York.

"14. That the City has heretofore constructed a portion of the improvements described in the 1943 Resolution, and the cost of such construction has been paid from moneys in the Construction Fund, and the unencumbered balance of the moneys to the credit of the Construction Fund is approximately $650,000.

"15. That, because of changes in the flow of tunnel traffic through the City since the issuance of the outstanding bonds, modifications and extensions of the improve-

ments which are described in the 1943 Resolution are necessary and desirable to facilitate the flow of tunnel traffic on the streets of the City (such improvements as modified and extended and embracing streets generally in the City being hereinafter sometimes collectively called the 'Approach Facilities'), and that it is necessary, on account of such modifications and extensions and also increases in the cost of labor and materials of construction, to provide additional funds to finance the cost of constructing such Approach Facilities.

"16. That the City Commission has determined to construct all or a part of the street improvements embraced in the Approach Facilities and to specially assess a portion of the cost thereof under the provisions of Sections 512 to 581, inclusive, of Title 37 of the Code of Alabama of 1940, as amended.

"17. That the City Commission has determined (a) to apply to the payment of the cost of the Approach Facilities (i) the moneys which now remain to the credit of the Construction Fund and (ii) the proceeds of the $5,000,000 City of Mobile Tunnel Revenue Refunding and Improvement Bonds hereinafter described over and above the amount required for refunding the outstanding bonds, and (b) to finance the balance of such cost by the issuance of general obligation bonds of the City under the provisions of Sections 293 to 307, inclusive, of Title 37 of the Code of Alabama of 1940, as amended, and to pledge, as security for such bonds, the proceeds of all special assessments levied upon property abutting on the streets the improvement of which shall be financed in part by such bonds, such special assessments not to exceed in the aggregate the principal amount of such bonds.

"18. That the Approach Facilities, after the construction thereof, will constitute a part of the existing street and highway systems of the City and will be maintained as such without any burden upon the revenues of the tunnel, and the revenues from the tunnel have been and will be more than sufficient to pay the cost of operating and maintaining the tunnel and to pay said City of Mobile Tunnel Revenue Refunding and Improvement Bonds and the interest thereon as the same shall become due.

"19. That on the 22nd day of February, 1949, under the authority of the Municipal Revenue Bond Act of 1935 (Title 37, Sections 341 to 352, inclusive, of the Code of Alabama of 1940), as amended, and Act No. 574 of the Legislature of Alabama approved October 6, 1947 (hereinafter sometimes called the 'Revenue Bond Acts'), the City Commission duly passed and adopted a resolution entitled:

" 'A resolution authorizing the issuance of $5,000,000 tunnel revenue refunding and improvement bonds of the City of Mobile, payable solely from tunnel revenues, to provide funds for refunding the outstanding city of Mobile Tunnel Revenue Anticipation bonds dated April 1, 1943 and to provide additional funds for constructing improvements and extensions of the approach facilities for the Bankhead Tunnel, including street improvements; providing that the bonds issued under the provisions of this resolution shall not constitute a debt of the city or a pledge of its faith and credit and that no holder of such bonds shall ever have the right to compel any exercise of the taxing power of the city or the appropriation of any funds other than such revenues to pay such bonds or the interest thereon; providing for the fixing and collecting of tolls and charges for the use of the tunnel; providing for the creation of certain funds; and setting forth the rights and remedies of the holders of such bonds.'

"That said resolution authorizes the issuance of revenue refunding and improvement bonds of the City of Mobile (hereinafter sometimes called the 'bonds') in the aggregate principal amount of Five Million Dollars ($5,000,000), for the purpose of providing funds, with other funds available for such purposes, for redeeming the outstanding bonds, including the payment of the redemption premium thereon, and paying all or a part of the cost of constructing the Approach Facilities. That a true copy of said resolution (hereinafter sometimes called the 'Resolution') is attached to said Petition for Validation and marked 'Exhibit "A" ' and made a part of said Petition.

452

"20. That the construction of the tunnel and its convenience to the travelling public have induced additional traffic on many of the streets of the City embraced in the Approach Facilities and have caused serious deterioration of said streets and a resultant increased traffic on other streets of the City; that the present deteriorated condition of said streets is seriously handicapping the business and commercial life of the City and is detrimental to the health, safety and welfare of the inhabitants of the City; and that it is necessary, therefore, that the City construct the Approach Facilities.

"21. That the Approach Facilities to be constructed under the proposed financing constitute appurtenances and approaches to, connections with and extensions of said tunnel project and are necessary to provide adequate facilities for the flow of tunnel traffic through the City.

"22. That the City has never derived or had the right to use any revenues from the tunnel for general corporate purposes of the City, and all of such revenues are now and have been and at all times will be pledged, under the provisions of the resolutions mentioned above, to the payment of the cost of maintaining, repairing and operating the tunnel and the payment of the principal of and the interest on the bonds heretofore issued in connection therewith as above set forth and the City of Mobile Tunnel Revenue Refunding and Improvement Bonds to be issued.

"23. That the Petition for Validation is filed for the purpose of determining the authority of the City to issue said City of Mobile Tunnel Revenue Refunding and Improvement Bonds and the legality of all proceedings had or taken in connection therewith, the validity of the means provided for the payment thereof and the validity of all pledges of revenues and of the covenants and provisions contained in the Resolution.

"24. That all allegations in said Petition for Validation of the Board of Commissioners of the City of Mobile in this cause are true."

■ I. Under the authority of the Municipal Revenue Bond Act of 1935, §§ 341 to 352, inclusive, Title 37 Code of 1940, the City of Mobile issued $2,600,000 tunnel revenue anticipation bonds dated May 1, 1939, to finance in part the construction of the tunnel under the Mobile River now known as the Bankhead Tunnel (the balance of such cost having been financed by a grant from the Federal Government). On February 20, 1941, the tunnel was opened for traffic. On account of unexpected volume of traffic using the tunnel after its completion and the resultant congestion at the western portal of the tunnel and the concentration of traffic on certain streets leading to the tunnel, the City of Mobile found it necessary in 1943 to issue its Tunnel Revenue Anticipation Bonds in the principal amount of $3,500,000 dated May 1, 1943, to enlarge and improve the entrance plaza at the western portal of the tunnel and improve the streets leading to the tunnel on which there was the greatest concentration of traffic and to refund all of the 1939 bonds then outstanding. Of the $3,500,000 bonds dated May 1, 1943, $2,393,000 were outstanding at the time of the rendition of the validating decree from which this appeal has been taken. It is now proposed to issue $5,000,000 Tunnel Revenue Refunding and Improvement Bonds to retire the outstanding bonds and with approximately $650,000 of the proceeds of the 1943 bonds still in the Construction Fund to improve the entrance plaza at the western portal of the tunnel and a large number of streets in the City of Mobile now in a badly deteriorated condition, which has resulted from the increased traffic in the City of Mobile since the opening of the tunnel in 1941. The proof shows and the court found that the additional traffic induced by the tunnel has increased the traffic on the streets in the City of Mobile and has caused them to deteriorate and their improvement and the improvement of other feeder streets is necessary to provide adequate facilities for the flow of tunnel traffic through the city. It is also shown by the evidence and found by the court that the present deteriorated condition of these streets is seriously handicapping the business and commercial life of the city and is detrimental to the health, safety and welfare of the inhabitants of the city.

By § 342 of the municipal revenue bond act any municipality is given power

"To acquire by gift or purchase, to construct, to reconstruct, to improve, to better or to extend any undertaking, within or without the municipality or partially within or partially without the municipality; to operate and maintain any undertaking for its own use and for the use of public and private consumers and users within and without the territorial boundaries of the municipality; to prescribe and collect, rates, fees, tolls, or charges for the services, facilities, and commodities furnished by such undertaking and in anticipation of the collection of such rates, fees, tolls, or charges to issue revenue anticipation bonds to finance in whole or in part the cost of the acquisitions, construction, reconstruction, improvement, betterment or extension of any undertaking and to pledge to the punctual payment of said bonds and interest thereon all or any part of the gross or net revenues of such undertaking (including the revenues of improvements, betterments, or extensions thereto thereafter constructed or acquired, as well as the revenues of existing systems, plants, works, instrumentalities, and properties of the undertaking so improved, bettered or extended) or of any part of such undertaking."

An undertaking is defined by § 341 of the act to include "revenue-producing undertakings or any combination of two or more" thereof, including tunnels, highways and parkways, "together with all parts of any such undertaking and all appurtenances thereto, including lands, easements, rights of way, contract rights, franchises, approaches, connections, * * *."

In Chamberlain v. Board of Commissioners of City of Mobile, 243 Ala. 662, 11 So.2d 724, 731, this court affirmed the decree of the Circuit Court of Mobile County upholding the validity of the $3,-500,000 Tunnel Revenue Anticipation Bonds ($4,500,000 were authorized but only $3,500,000 were issued) under the Municipal Revenue Bond Act, and in its opinion stated the criteria for determining whether or not bonds may be issued for improvements and extensions under the Act.

"This was the undisputed testimony on the trial of the case. It thus appears that the 'Plaza Enlargement' and 'Parkway Improvements,' as described in truth and fact, constitute an extension of the tunnel facilities and are proper appurtenances to it. We think it would be too narrow a construction of the law to confine the term 'tunnel' as an undertaking, mentioned in section 341, Code, supra, to the tube itself. The statute includes 'appurtenances,' 'approaches' and 'connections.' Just what should be so considered as a part of the undertaking is dependent upon many factors, largely influenced by factual conditions which probably have no exact counterpart elsewhere. Much technical knowledge is also useful in solving this feature of the problem, together with experience in that connection, including a personal view of the situation and conditions. It seems to be customary elsewhere to include in such a project quite extended approaches. The facts do not justify a conclusion that the proposal is a covinous scheme to divert the revenue from this facility to pay for extraneous improvements."

It also appears that the proposed street paving program will not be financed entirely from the proceeds of the proposed bonds. There is a balance in the Construction Fund of approximately $650,000. This amount, added to approximately $3,000,000 to be made available from the proceeds of the bonds (over and above the amount required for redeeming the outstanding bonds) and the proceeds of general obligation bonds to be issued under the provisions of §§ 293 to 307, inclusive, Title 37, Code of 1940, as amended; will enable the City to pave many streets in the City and thus relieve the present congestion and facilitate the flow of tunnel traffic through the City. The general obligation bonds will be supported in addition to the full faith and credit of the City by a pledge of the proceeds of all special assessments levied upon property abutting on the streets the improvement of which shall be financed in part by such bonds, such special assessments not to exceed in the aggregate the principal amount of such bonds. Thus, the proposed financing program, in

case the City should issue its general obligation bonds in an amount sufficient to match the available funds mentioned above as now contemplated, will provide over $7,000,000 for street improvements within the City, with only 50% instead of 100% of the cost specially assessed on abutting property, will relieve traffic congestion caused by the tunnel, and will not affect the debt incurring power of the City under the Constitution of Alabama, and no taxes can be levied or any other general revenues of the City be made available to pay the proposed Tunnel Revenue Refunding and Improvement Bonds. Clearly such program is within both the letter and the spirit of the Municipal Revenue Bond Act, as amended and supplemented. In this connection it is to be noted that the term "undertaking" is defined in the Municipal Revenue Bond Act as including tunnels, highways, parkways "or any combination of two or more" thereof, "together with all parts of any such undertaking and all appurtenances thereto." Surely the financing involved in this proceeding is not "a covinous scheme to divert the revenue from this facility (the tunnel) to pay for extraneous improvements", as the proposed street improvement program is directly related to tunnel traffic and has been made necessary because of the present deteriorated condition of the streets in the City resulting in part from such traffic.

Under the foregoing decision this Court also upheld the right of the city as a part of the financing to refund the Tunnel Revenue Anticipation Bonds then outstanding. Additional authority in this connection has been granted by Act No. 574 of the Legislature of Alabama approved October 6, 1947, General Acts 1947, p. 403 et seq., which provides that any incorporated city having a population in excess of 78,500 and not exceeding 250,000 inhabitants according to the last preceding or any subsequent federal census and having bonds outstanding under the provisions of the Municipal Revenue Bond Act, "may at any time not earlier than one year prior to the first redemption date of such bonds * * * issue and negotiate new bonds, on such terms as the governing body of such City shall deem advisable, for the payment of any such outstanding bonds, including any premium necessary to redeem or retire such outstanding bonds and any interest accrued or to accrue to the date of redemption or retirement of such bonds, and, if deemed advisable by the governing body of such city, for the additional purpose of constructing improvements, extensions or enlargements of the undertaking for which such outstanding bonds shall have been issued."

The foregoing act also provides that such new bonds may mature at such time or times not exceeding forty years from their date as may be provided by the resolution or resolutions authorizing the issuance of such bonds, and further provides that all laws and parts of laws in conflict therewith are thereby repealed. We think it clear that the City of Mobile is fully authorized to issue the proposed bonds for the purpose of redeeming the outstanding City of Mobile Tunnel Revenue Anticipation Bonds and for the additional purpose of providing funds for paying all or a part of the cost of the Approach Facilities and to provide that the proposed bonds shall mature at the times and in the amounts provided in the resolution of February 22, 1949, adopted by the Board of Commissioners of the City of Mobile.

■ II. We are satisfied and so conclude that the foregoing Act of the Legislature approved October 6, 1947, is a valid general law of the State of Alabama. Conversely, the foregoing statute is not a local law and was not required to be advertised as required by the Constitution. Even if it be true that the law is applicable and intended to be applicable for the present to one city only, this is not the test of a local or general law. If it will apply to all other cities as they come within the class based on population, the law is a general law just so it does not amount to a designation rather than a classification because of its limitations and arbitrary character. Knowing the population growth of some of the larger cities of the state, it is reasonable to assume that other cities will eventually come within the purview of the act. Besides we should not strike down an act of the legislature unless the act is clearly beyond a reasonable doubt in

violation of the Constitution. Opinion of the Justices, 249 Ala. 511, 31 So.2d 721; State ex rel. Hyland v. Baumhauer, 244 Ala. 71, 12 So.2d 342; Wages v. State, 225 Ala. 2, 141 So. 709; State ex rel. Camp v. Herzberg, 224 Ala. 636, 141. So. 553.

III. We do not consider that the issuance of the proposed bonds and the pledge to the payment thereof of the tolls and other revenues of the Bankhead Tunnel as provided in the resolution adopted by the Board of Commissioners of the City of Mobile on February 22, 1949, will create a debt of the City of Mobile in violation of §§ 222, 225 or 226 of Article XII of the Constitution of 1901. The City of Mobile does not by the issuance of the bonds obligate itself to pay the principal or interest of the bonds or any other sum except from revenues derived from the sale of the bonds and the operation of the tunnel. The bonds do not and shall never constitute an indebtedness to which is pledged the full faith and credit of the city of Mobile. Such covenants, agreements, representations or warranties as may be made or contemplated in connection with the bonds shall never impose a pecuniary liability upon the City of Mobile or a charge on the general credit of the City of Mobile. Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859.

Will the pledging of the revenues of the tunnel freeze funds which have already been potentially acquired and so create a debt because it will be an obligation to pay with the income of property already owned? We think not. This question was fully treated in Chamberlain v. Board of Commissioners of City of Mobile, 243 Ala. 662, 11 So.2d 724. It was there pointed out that there is no provision made for any use or disposition of revenue collected from toll charges in excess of the amount necessary to pay for cost of acquisition and expenses of operation including maintenance and reserves therefor. There is nothing to indicate that any part of the revenue can ever reach the general fund of the City of Mobile. The City of Mobile is virtually a trustee of the fund derived from the toll charges and can use

that fund only for the purpose thus prescribed. In fact the tunnel does not become the property of the City of Mobile in the same sense as a waterworks or electric light plant and the tunnel is subject to state legislation, subject to constitutional rights.

We conclude that upon principle as well as authority the decree of the lower court should be affirmed.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.