(117 So. 473)

**STATE ex rel. MONTGOMERY v. MERRILL.**
(7 Div. 815.)

Supreme Court of Alabama. June 14, 1928.

Rehearing Denied June 30, 1928.

150

Rutherford Lapsley and J. J. Willett, Jr., both of Anniston, for appellant.

Knox, Acker, Sterne & Liles and Merrill & Field, all of Anniston, for appellee.

GARDNER, J. The purpose of this quo warranto proceeding is to test the constitutionality of the act approved September 6, 1927, entitled "An act to authorize and create

an additional judge of the Seventh judicial circuit of Alabama and to provide for his election, jurisdiction, powers, authority and qualifications, to render him liable to all the pains and penalties of the other circuit judges of the state, and to provide for the salary of said judge." Gen. Acts 1927, p. 633. No notice of an intention to apply for the passage of this act was ever published, as required by section 106 of the Constitution of 1901 for the enactment of local legislation, and the pivotal question, therefore, here for determination, is whether the act is a general or a local law. If the latter, it must fall.

Counsel for relator lay much stress in support of their insistence that this is a local law upon Wallace v. Board of Revenue of Jefferson County, 140 Ala. 491, 37 So. 321, and State ex rel. Atty. Gen. v. Sayre, 142 Ala. 641, 39 So. 240, 4 Ann. Cas. 656, wherein it was held that the establishment of a judicial circuit of certain defined and limited territorial area was local legislation and within the influence of section 106 of our Constitution.

In the Wallace Case, supra, the court, in discussing the question, used the following expression:

"The act is public, it is true, but local in effect, and not general in its application to the people of the whole state. No one outside of the county who does not bring himself within its influence is affected by it."

But the logic of the holding of these authorities does not lead to a like result as to an act creating the office of additional circuit judge. It cannot be said concerning such judicial office that no one outside the circuit is brought within the influence of his power and authority, for a circuit judge is a state official, constituting a very important part of the judicial machinery of the state, with jurisdiction coextensive with the state.

"The jurisdiction of the circuit judges is coextensive with the state. They have the same official authority and power in one county as in another." Ex parte Nelson & Kelly, 62 Ala. 376; Brue v. McMillan, 175 Ala. 416, 57 So. 486; Board of Education v. Watts, 19 Ala. App. 7, 95 So. 498; Ex parte Watts, 209 Ala. 115, 95 So. 502.

Every person and all property within the confines of the state come, therefore, within the influence of his authority.

A brief consideration of the history of the office supports the conclusion here reached, and is a refutation of the theory that this highly important judicial position has become localized by virtue of a division of the state into convenient circuits, with judges designated to primarily preside therein.

"The English common law, in so far as it is applicable in this country, and where it has not been abrogated or changed by constitutional or statutory enactments, is in force in the several American states. * * * The American colonists brought this law with them from the home of their race, and adopted it and lived under its precepts as naturally and inevitably as they continued to use their mother tongue. * * * It has always been the understanding that that law was accepted and put in force by the founders of the American states, and continued in force by these provisions, only in so far as it was applicable to the conditions and circumstances of this country." Black on Interpretation of Laws, § 94, pp. 231, 232.

Like the common law, the fundamental principles of our judicial system were derived from England and here adopted to our needs and conditions in harmony with our form of government.

"Our system of courts and the principles governing them are derived from the common law. But in England the tribunal was called the 'curia' or 'court,' because it was held by the king himself originally. The judgments of the courts read as the judgments of the king, and when he ceased to hold the court in person, and delegated this function to one of his officers, the character of the judgment was the same. * * * In this country the power vested in the king vests in the body of the people, and the courts sit as their representative." Bridges v. McAlister, 106 Ky. 791, 51 S. W. 603, 45 L. R. A. 800, 90 Am. St. Rep. 267.

See, also, Andrews, American Law, vol. 2, p. 1208.

Very clearly, in England, the itinerant judges, assigned to hold court in various portions of the realm, and who correspond to our present circuit judges in this state, were in no manner considered as localized.

"The courts of assize and nisi prius * * * composed of two, or more commissioners * * * sent by the king's special commissioner all round the kingdom * * * to try by a jury of the respective counties the truth of such matters of fact as are then under dispute in the courts of Westminster Hall. * * * These judges of assize * * * afterwards made their circuit round the kingdom once in seven years for the purpose of trying causes. * * * They were afterwards directed by Magna Charter to be sent into every county once a year." Cooley's Blackstone, vol. 2, pp. 56, 57.

"The Chief Justices, the treasurer, two or three bishops, will usually be sitting while others come and go; some of them may be away upon circuits." Pollock & Maitland History of English Law, vol. 1, p. 133.

"The visitation of the counties by itinerant justices has been becoming systematic." Id. p. 134.

"These itinerant justices seem to have been chiefly employed in hearing the pleas of the crown * * * and in entertaining some or all of the new possessory actions." Id. p. 135.

"Just at this time the practice seems to have been to divide England into four circuits, and to send two justices of assize around each circuit." Id. p. 180.

This brief review will suffice to demonstrate that judges of the nisi prius courts of England had jurisdiction and exercised this

power over the entire kingdom, and that the establishment of circuits had no tendency to localize the position of the judge.

It is of interest in this connection to note that in the act establishing the Alabama territory it was provided that "No·judge shall sit more than twice in succession in the same court" (Code 1923, p. 29), though this provision was repealed the following year. Code 1923, p. 32. The first General Assembly of Alabama, however, re-enacted this provision in the following language:

"When the circuit judges shall have been elected * * *..they shall * * * hold the circuit courts at the times and places designated and established by law; and shall reside within the circuit to which they may be severally elected; and in case of the removal of any such judge out of the circuit to which he is elected, his office shall be vacated thereby: Provided, that nothing, in this act contained, shall be so construed as to prevent the interchange of *ridings by such judges* in their several circuits in the manner hereinafter pointed out, that is to say; the *judges holding the courts* aforesaid, shall so alternate, that no *one judge shall hold the courts of the same circuit for two courts in succession.*" (Italics supplied.) Clay's Digest, p. 295, § 35.

The framers of the Constitution of Alabama of 1819 evidently did not regard the office as a local one, for they made no requirement of eligibility for the position of circuit judge that he should before appointment be a resident of the circuit over which he was designated primarily to preside, but only the provision that he shall, "after his appointment, reside in the circuit for which he may be appointed." Const. 1819, vol. 1; Code 1923, p. 72. A resident of any section of the state was eligible to be chosen as judge of any circuit in the state, and such situation continued the law of this state until changed by the Constitution of 1875 (section 4, art. 6, Const. 1875; section 142, art. 6, Const. 1901), providing a residence in the circuit of one year next preceding his election.

The state-wide conception of the office of the circuit judge is further illustrated by the provision of our state Constitution of 1819 (section 3, art. 5), to the effect that the Supreme Court should consist of the several circuit judges, using the following language:

"Until the General Assembly shall otherwise prescribe, the powers of the Supreme Court shall be vested in, and its duties shall be performed by, the judges of the several circuit courts within this state; and they or a majority of them, shall hold such sessions of the Supreme Court, and at such times as may be directed by law."

Certainly, the framers of the Constitution of 1819 could not have manifested a clearer refutation of the theory that the office of circuit judge was a matter of only local concern or interest, and not a position of state-wide

power, authority, usefulness, and influence. The constitutional provision that "the judges of the several circuit courts may hold courts for each other, when they may deem it expedient, and shall *do so when directed by law*," is not to be construed as any recognition of a previously limited jurisdiction, but more as guarding against confusion in the method of exercising such jurisdiction. The English system, as we have seen, was ·clear to the authority and exercise of jurisdiction of the nisi prius judge throughout the realm, and, in adopting this system in the judicial machinery of the state, such a provision was deemed wise and appropriate as regulating the work of the court and obviating any conflict therein.

For convenience, the state is divided into circuits, and the presiding judge to reside therein intended to bring the official in closer contact with the people over whose court he would most frequently preside, but not intended as a derogation of any of his powers with jurisdiction coextensive with the state. He is still a state officer, with salary paid out of the state treasury, and these provisions were not intended to convert such a judge into a local officer.

This court, in ex parte Nelson & Kelly, supra, writing without citation of authority, that a circuit judge had the same official authority and power in one county as in another, was following no express constitutional provision, but evidently had in mind the character of the office as derived from the English system, and as here adopted.

■ The argument is pressed that this is local legislation, for the reason that the residents of the Seventh judicial circuit are those most immediately affected, and that the counties composing the circuit are financially concerned, as under the law a court stenographer will automatically be supplied at some expense to those counties. Reduced to its last analysis, the argument is that the people of these counties are affected to a greater extent than those of other sections of the state. But this will not suffice to localize the office.

"Although it does not apply in its every detail throughout the entire state a law which has a bona fide application to the entire state as to some of its chief features, is a general and not a local law." State ex rel. Collman v. Pitts, 160 Ala. 133, headnote 7, 49 So. 441, 686, 135 Am. St. Rep. 79.·

It of course frequently occurs that in practical operation a general law will necessarily affect one section of the state to a greater extent than another—such, by way of illustration, laws regulating coal mines having vital effect in industrial sections but of less concern in rural communities, and likewise laws regulating oyster culture, and numerous other illustrations that might be given. While the people of the Seventh circuit are more

interested in the operation of the law than those of other sections of the state, yet the act applies to every county in the state, as it creates a judgeship having jurisdiction over all persons and property within the state.

Counsel for appellee direct attention to the fact that, by unadvertised general law (Acts 1923, p. 387) some few years ago, an additional judgeship was created for the Fifth judicial circuit, and the validity of the act has never been challenged by any person or by any department of the government. This is doubtless a matter of some historical interest in this connection, but no necessity exists for a consideration thereof so far as the present act is concerned, and no weight is given thereto. It is a well-recognized rule that it is the duty of the court to uphold a law when it is fairly susceptible of two interpretations, one of which maintains its constitutionality and the other strikes it down, though the adoption of the former be the less natural; and "it is also our duty to not construe a law as a local one, when it is so worded and framed as to be interpreted as a general rather than a local law, in order to save its constitutionality." State ex rel. Collman v. Pitts, supra. This of course results from the rule that, before a statute is stricken as unconstitutional, the court must be convinced beyond all reasonable doubt. Reynolds v. Colliers, 204 Ala. 38, 85 So. 465.

We are of the opinion the history of the office, under our judicial system derived from that of England, the consideration given thereto by the framers of our Constitution and by the lawmakers, and judicial decisions recognizing the state-wide scope of the power, authority, and jurisdiction of a circuit judge, all lead to the logical conclusion that an act creating such additional judgeship for a designated circuit is a general law, and that section 106 of the Constitution is therefore without application.

It is further insisted that the provision of section 4 of the act here in question, to the effect the two judges of said circuit shall not be qualified electors of the same county, is violative of section 154 of the Constitution of our state, and that the act in question must fall. The validity of section 4 of the act will not be before this court for determination until some person adversely affected presents the issue in court.

"Unless essential to the decision of an actual case, the constitutionality of legislative enactments will not be inquired into or determined." State ex rel. Crumpton v. Montgomery et al., 177 Ala. 212, 59 So. 294; Imperial Cotton Seed Oil Co. v. Shanks, 177 Ala. 522, 58 So. 390.

Conceding, without deciding, the invalidity of section 4, yet said section may be stricken, and there still remains the act "complete within itself, sensible, capable of being executed, and wholly independent of that which is rejected." Dunn v. Dean, 196 Ala. 486, 71 So. 709; State v. Davis, 130 Ala. 148, 30 So. 344, 89 Am. St. Rep. 23.

The argument that the act is violative of section 45 of the Constitution rests likewise upon the insistence that section 4 thereof is not in the title, and forms a distinct subject-matter. The following language from Gibson v. State, 214 Ala. 38, 106 So. 231, is here pertinent:

"If the title contains but one subject, and the act deals with that subject, any added provisions not germane to the subject, if severable from its valid provisions, will be stricken out, and the act otherwise upheld if consistent with apparent legislative intent."

If section 4 be stricken and regarded as surplusage, a complete act remains, with the subject-matter clearly expressed in the title. Ballentyne v. Wickersham, 75 Ala. 536.

As previously stated, upon the validity vel non of section 4 of the act, we express no opinion; the question not being here presented for consideration.

Mr. Justice Sayre, however, expresses his view that section 4 of the act is violative of our Constitution and void, and that this question should be decided on this appeal; but that, with this section stricken, the act, complete within itself, remains capable of execution independent of section 4, and he is in entire accord with the conclusion here reached.

We conclude the act here assailed is not violative of the Constitution, and the judgment of the court below will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.