269 So.2d 109

David W. PRUETT et al.

v.

Clifford K. DELONY.

8 Div. 484.

Supreme Court of Alabama.

Sept. 21, 1972.

Rehearing Denied Nov. 30, 1972.

Harris, Harris, Shinn & Harris, Decatur, for appellants.

McDonnell & Jones, Sheffield, for appellee.

## PER CURIAM.

The only point raised by this appeal is whether the Honorable Clifford K. Delony, circuit judge of Colbert County, can require the Colbert County Commission to pay his supplemental salary as provided by law.

Judge Delony filed a mandamus petition to compel the county commission to pay his supplemental salary which he claimed he was entitled to by law. A special judge appointed to hear the case decided in his favor and ordered the county commission to pay him $15,164.50, the amount the parties agreed was due if he was legally entitled to recover.

The Colbert County Commission appealed and filed a supersedeas bond.

Appellants contend that each legislative act purportedly authorizing the supplemental salary during his six-year term beginning in January 1965 was unconstitutional, and that the Legislature abolished the county supplement beginning with his new term in January 1971. Those are the questions which we must consider and decide.

Judge Delony was elected on November 5, 1956 as judge of the Thirty-first Judicial Circuit, then consisting of Franklin and Colbert counties, to fill the unexpired term of the judge who had resigned. He was elected for a full six-year term in November 1958, the term beginning on the first Monday after the second Tuesday in January 1959. He was re-elected in November 1964 for a six-year term beginning on the first Monday after the second Tuesday in January 1965.

The Alabama Legislature, in 1965, divided the Thirty-first Judicial Circuit consisting of Colbert County and Franklin County, into separate circuits. Colbert continued as the Thirty-first Circuit. Franklin became the Thirty-fourth Circuit. Act No. 406, Acts of Alabama, Regular Session, 1965, p. 586. By Act No. 156 of the Special Session of the Alabama Legislature of 1966 (Acts of Alabama, Special Session, 1966, p. 182) an additional judgeship for the Thirty-first Judicial Circuit was created. Judge Delony held judgeship no. 1. Judge Leonard I. Burt was appointed to judgeship no. 2 on November 28, 1966 and served under this initial appointment until December 5, 1968, when he began a new term by virtue of his election in November 1968.

Act No. 156 required judge no. 2 to be "elected and qualified as provided in Article VI, sections 158 and 159, of the Constitution of Alabama." The act further provides: "The judge for the additional judgeship shall be elected thereafter as other circuit judges in this state."

Judge Delony claims he was entitled to the following supplemental compensation.

| PERIOD | RATE | AUTHORITY | AMOUNT |
|---|---|---|---|
| 8/16/65 to 12/4/68 | $1,200 per annum | Act. No. 569, Acts of Alabama 1947, p. 402 (Tit. 13, § 177(1b); Code, Recomp., 1958) Act. No. 406, Acts 1965, p. 586 (Tit. 13, § 112, Code, Recomp. 1958) | $3,958.06 |
| 12/5/68 to 1/19/69 | ¼ of $12,000 per annum | Act. No. 195, Reg. Session, 1967, p. 560 | $ 375.00 |
| 1/19/69 to 1/18/71 | ¼ of $15,000 per annum | Act. No. 195, Reg. Session, 1967, p. 560; Act. No. 350, Acts 1967, p. 909 | $7,500.00 |
| 1/18/71 to 12/31/71 | 20% of $18,000 per annum | Act. No. 1095, Acts 1969, p. 2030; Act. No. 1123, Acts of Alabama, 1969, p. 2082 | $3,435.66 |
| | | | $15,268.72 |
| | | Credit: Payment by Colbert County 1/31/69 | 104.16 |
| | | | $15,164.56 [1] |

1. The parties agreed that the amount was $15,164.50, instead of $15,164.56—a small six-cent difference.

**582**

Stated succinctly, Judge Delony contended successfully in the trial court that when Colbert County became a one county circuit under the provisions of Act No. 406, Acts of Alabama, 1965, p. 586, effective August 16, 1965, the provisions of Act No. 569, Acts of Alabama, 1947, p. 402, became effective and he, as judge of the one county circuit, became entitled to the $1,200 per annum supplement the 1947 Act required the county to pay. To this argument, the county claims that the so-called Boutwell Amendment (Amendment 92, Constitution of Alabama, 1901) prohibits the operation of the 1947 Act, even though the 1947 Act predates the adoption of the Boutwell Amendment, because the payment of such supplement would be to increase Judge Delony's salary during his term, which all parties admit was for six years, beginning on the first Monday after the second Tuesday in January, 1965.

■ In discussing this contention, we are guided to our result by those well-known principles of law which provide that it is our duty to uphold rather than destroy a legislative enactment, unless convinced to the contrary beyond a reasonable doubt. We presume the act is constitutional, until clearly convinced to the contrary. Pruett v. Patton, 288 Ala. 710, 265 So.2d 130, 1972.

■ In view of the fact that the act which authorized the county supplement was passed in 1947, prior to the time of the adoption of the Boutwell Amendment, the question we must answer is as follows: Did the Legislature violate the Boutwell Amendment in 1965 by creating the one-county circuit, thereby making the judge thereof eligible for the supplemental salary which was authorized by the 1947 Act? We think not. This court had under consideration a similar problem in Pruett v. Patton,. supra. We do not think the Legislature, by creating the Thirty-fourth Judicial Circuit, was using a colorable pretext to evade the Constitution. In fact, Act No. 406, 1965, supra, on its face, shows there were several one county, one judge circuits in the state. In each of these other circuits the judges were entitled to and, for aught appearing, were receiving the supplemental salaries authorized by the 1947 Act. While this court has never construed Amendment 92 insofar as its application to circuit judges is concerned, it would seem fair to interpret Amendment 92 to allow a circuit judge who becomes, by operation of law, entitled to receive a supplemental salary to receive such salary if it is being legally paid to other judges in the state similarly situated. The clear intent of Amendment 92 seems to be that if one "member of a court" becomes constitutionally and legally entitled to an increase in salary then every other member of the court becomes entitled to such increase. We think the intent of Amendment 92 was *not* to prohibit one circuit judge from receiving the benefits of a salary increase if another circuit judge, similarly situated, was entitled to receive such amount under provisions of law. In determining this, we are mindful that the amounts of county supplements vary from circuit to circuit. For instance, if the judge of a one county circuit in one part of the state receives an increase in salary after the completion of a term, then in that event, every other judge of a one county circuit is entitled to receive the same benefit, if the Legislature has so provided. The converse is also true. If the Legislature should abolish the county supplement in all one county circuits, the decrease in salary would take effect after the expiration of the term of office of the judge whose term first expired.

Summarizing as to this period, in 1947 by general act (Act No. 569) the Legislature directed that a county supplement of $1,200 per year be paid in all one county circuits with two circuit judges where the population of the county was less than 113,000. The act was amended in 1949 and is listed in the 1958 Recompilation as Tit. 13, § 177(1b). This amendment also

carries forward the 1947 provision that one county circuits with only one judge shall be paid $1,200 per annum. So when Judge Delony ceased to be a judge of a two county circuit, and became the judge of a single county circuit, he fell into the minimum county supplement of $1,200. When another judgeship was created and the circuit had two judges, the judges were in a different category but received the same sum as a county supplement under § 177(1b).

The trial court did not err in continuing the $1,200 supplement for this period.

### For Period December 5, 1968 to January 18, 1971

This period was divided in briefs, but as the same law applies to both periods, we consolidate it into one.

As we understand it, Judge Delony claims that the county supplement during this period should be one-fourth of the amount of his salary paid by the state, under the provisions of Act No. 195, Acts of Alabama 1967, p. 560, which provided in pertinent part:

"Beginning with the next term of office of any circuit judge in any judicial circuit composed of only one county having two circuit judges and a population of not less than 46,500 nor more than 48,000 inhabitants according to the last or any subsequent federal decennial census, the salary of each such circuit judge shall be supplemented by the county composing any such circuit by an amount equal to one-fourth of the salary now or hereafter paid such judge by the State of Alabama. The supplement hereby authorized shall be paid in equal monthly installments out of the general fund in the county treasury, shall be in addition to the salary paid such judges by the state, and shall be in lieu of any and all other salary supplements heretofore authorized."

It will be noted that this act applied only to Colbert County when passed and that it was passed during the term of Judge Delony (1965–1971). But he contends that when Judge Burt was appointed, Judge Burt became entitled to this new one-fourth supplement, and since Judge Burt was so entitled, he, Judge Delony, was also entitled to the raise even though it came during his term.

Judge Burt is not a party to this proceeding and he is not necessarily bound by what we say about his county supplement, but in view of the argument that Judge Burt was entitled to raises and as a result Judge Delony was so entitled, it is necessary that we consider whether, based upon the information in *this* record, Judge Burt was entitled to the increased county supplement.

Act No. 156, Acts of Alabama 1966, Special Session, p. 182, created an additional circuit judge for the Thirty-first Judicial Circuit (Colbert County). Section 1 provides:

"There is hereby created an additional judgeship for the Thirty-first Judicial Circuit. An additional judge shall be appointed for the circuit by the Governor, who shall hold office until his successor is elected and qualified as provided in Article VI, Sections 158 and 159, of the Constitution of Alabama. The judge for the additional judgeship shall be elected thereafter as are other circuit judges in this state."

Judge Burt was appointed by the Governor on November 28, 1966 and under Section 2 of the Act, Judge Delony was designated as Judge No. 1 and Judge Burt as Judge No. 2.

Section 155 of the Constitution fixes the term of circuit judges at six years, and Section 158, mentioned in Section 1 of Act No. 156, provides:

"Vacancies in the office of any of the justices of the supreme court or judges who hold office by election, or chancellors of this state, shall be filled by appointment by the governor. The ap-

pointee shall hold his office until the next general election for any state officer held at least six months after the vacancy occurs, and until his successor is elected and qualified; the successor chosen at such election *shall hold office for the unexpired term* and until his successor is elected and qualified." (Emphasis supplied)

In McDonnell v. State ex rel. Jones, 199 Ala. 240, 74 So. 349, Chief Justice Anderson, speaking for the court, quoted Section 158 of the Constitution, and then said:

"This section deals solely and entirely with vacancies and the method of filling same by restricting the appointee of the Governor, or one elected thereunder, to the filling of a vacancy to the unexpired term, and is not intended to encroach upon a new succeeding term so as to cut it down or to change the commencement and termination thereof so as to throw it out of harmony with the general system and term of all probate judges. This section succeeds section 17 of the Constitution of 1875, which old section provided for filling vacancies in the office there mentioned and who should hold under appointment from the Governor for the remainder of the term, regardless of the date that the office became vacant, and section 158 of the present Constitution changed this clause, not to extend in any manner the term so fixed by section 155, but merely to restrict the time that the appointee should hold under certain conditions and giving the people the right to fill the vacancy by an election in case the vacancy occurred over six months prior to an election. * * *"

We now apply Section 158 to the new judgeship to which Judge Burt was appointed.

From the moment the Governor signed Act No. 156, which created the new judgeship, there was a vacancy, and an unexpired term to be filled. The unexpired term started that day, August 19, 1966 and continued until January 18, 1971, because Act No. 156 stated the new judge should hold office under Sections 158 and 159 of the Constitution and thereafter be elected as are other circuit judges in this state.

We cannot agree with the contention that Judge Burt served two terms, one appointed and one elective for two years. Both of these periods were part of the "unexpired term" provided for in Section 158 of the Constitution. Judge Burt's appointive period ended after the general election in 1968. In that election, Judge Burt was elected and he became the "successor" when he qualified. Also, as "the successor chosen at such election" he continued to hold the office "for the unexpired term" which was until after the general election in 1970 when practically all of the circuit judges in Alabama were elected to a new six-year term.

All of Judge Burt's tenure in office up to January 18, 1971, including his appointive period and the remainder of the unexpired term, was within Judge Delony's full term of January 17, 1965 to January 18, 1971.

Amendment 92 to the Constitution, the Boutwell Amendment, provides in part:

". . . (N)or shall the legislature or any county of the state increase or decrease, or authorize the increase or decrease of, the salary, fees or other compensation of any person filling an unexpired term in any such office during the remainder of such term, either before or after the appointment or election of such person to fill the unexpired term . . ."

Therefore, under Amendment 92, no Act of the Legislature could increase either Judge Burt's or Judge Delony's salary during the full term of Judge Delony; and to demonstrate that this was the Legislature's intention, Section 4 of Act No. 156 creating the new judgeship provides:

"The compensation of Judge No. 2 shall be paid in the same amount and under the same terms and manner as that of Judge No. 1."

It follows that the trial court erred in allowing an increase in pay in this period and the judgment of the circuit court must be reversed.

### Period from January 18, 1971 to December 31, 1971

Judge Delony claims he is entitled to a supplemental salary of $3,600 annually, payable by the county under the provisions of Act No. 1123, Acts of Alabama, 1969, p. 2082, (Tit. 13, § 177(1f), Code, Recomp. 1958) and Act No. 1095, Acts of Alabama, 1969, p. 2030. Act No. 1095, approved September 12, 1969, is carried in the 1958 Recompiled Code as Tit. 13, § 125(94c) and provides:

"Beginning with the next term of office of the circuit judges of the 31st judicial circuit, the salary of the circuit judges shall be supplemented by the county composing such judicial circuit, and the board of revenue or other like governing body of such county, is hereby authorized, empowered, and directed to supplement the salary paid by the state of Alabama to each circuit judge of the 31st judicial circuit, by an amount equal to 20% of the salary now, or hereafter paid said judges by the State of Alabama. The supplement hereby authorized shall be paid in equal, monthly installments, out of the general fund in the county treasury, and shall be, in addition to the salary paid such judges by the state."

Act No. 1123, supra, sets the salary of each circuit judge in the state at $18,000 per annum, effective January 18, 1971. Act No. 1123, in addition to providing for a salary of $18,000 per annum for each circuit judge, further provided:

"This act shall not affect the compensation payable to any circuit judge by any county except Colbert County and the 31st judicial circuit as herein provided.

"All general, special or local laws or parts of such laws applicable to such county and the 31st judicial circuit which provide for the payment of any salary or supplement to the salary of the circuit judges of said judicial circuit from the county general fund are hereby repealed."

Act No. 1123 was approved September 13, 1969, one day after Act No. 1095 was approved.

Judge Delony contends that Act No. 1123, insofar as it attempted to repeal Act No. 1095, was unconstitutional. The county, on the other hand, claims that the Legislature, by passage of Act No. 1123, intended to repeal all laws providing for a supplemental salary to be payable by the county to each circuit judge.

Since Judge Delony began a new term in January, 1971, the county makes no contention that the Boutwell Amendment is applicable. The county strongly contends, however, that Section 2 of Act No. 1123, approved September 13, 1969 [Acts of Alabama, Vol. III, pp. 2082–2083] repealed all previous legislative acts making provisions for a supplemental salary to be paid by Colbert County.[2]

2. Act No. 1123 was introduced in the Senate on June 19, 1969 as Senate Bill 518, and was assigned to the Senate Finance and Taxation Committee. Its title read: "To fix the compensation of circuit judges in Alabama; and to provide the method of payment and effective date thereof." Senate Journal, Reg.Sess., 1969, p. 477. Hereinafter, all references to the Senate and House Journals will be by abbreviation and will list the page number of such journals only.

The Senate Finance and Taxation Committee returned the Bill to the Senate with a favorable report, with substitute.

It was read a second time and placed on the calendar (S.J., p. 1270). Section 2 of the Senate Finance and Taxation Committee substitute for Senate Bill 518 read as follows:

"This Act shall not affect the compensation payable to any circuit judge by any county."

The Finance and Taxation Committee substitute was adopted. Twenty voted for, two against (one of which was the senator representing the senatorial district which included Colbert County), and two abstained. (S.J., pp. 1497, 1498). The Bill was sent to the House and

Judge Delony argues that Act No. 1123 is void in that Section 2 of the Act makes it a local act within the meaning of Section 110 of the Constitution.[3] We cannot agree. Act No. 1123 was a general law. Its title was "To fix the compensation of circuit judges in Alabama; and to provide the method of payment and effective date thereof." Section 2 of the Act was germane to this title in that it decreased the salary of the judges of the Thirty-first Judicial Circuit by repealing *all* laws which provided for the payment of any salary or supplement to the salary of those judges from the county general fund. The decisional law of this state is to the effect that circuit judges are state officers. State ex rel. Montgomery v. Merrill, 218 Ala. 149, 117 So. 473 (1928). The jurisdiction of a circuit judge is coextensive with the state, and they have official authority and power in one county as well as in another. State v. Merrill, supra. The

Legislature, having the power to increase or decrease the salary of circuit judges within the limitations imposed by the Constitution, was vested with the sole power to determine the source from which the salary should be paid. Stone v. State ex rel. Courtney, 233 Ala. 239, 171 So. 362 (1936). In Opinion of the Justices, 252 Ala. 543, 41 So.2d 907 (1949), the Justices of this Court were asked to give their opinion on the constitutionality of a proposed Act which created an additional judgeship in the Eleventh Judicial Circuit and also provided for an increase in the salary of the then existing judge by providing that, in addition to the salary provided to be paid circuit judges by the state, judge no. 1 would receive a supplemental salary of $1,800 annually to be paid out of the county treasuries of the counties in the circuit. One of the questions on which the Justices of this Court were requested to give their opinion was whether the bill had to be pub-

---

received. (H.J., p. 1874). It was assigned to the Judiciary Committee of the House and was given a favorable report (H.J., p. 2357). When Senate Bill 518 was taken up on the calendar in the House, the state representative from Colbert County offered an amendment as follows:

"Amend Section 2 of Senate Bill 518 by striking Section 2 thereof and substitute therefor the following:

" 'This act shall not affect the compensation payable to any circuit judge by any county except Colbert County and the 31st judicial circuit as herein provide. (sic)

" 'All general, special or local laws or parts of such laws applicable to such county and the 31st judicial circuit which provide for the payment of any salary or supplement to the salary of the circuit judges of said judicial circuit from the county general fund are hereby repealed.'

"And the amendment was adopted.

"Yeas 66; Nays 0."

The amendment was adopted (H.J., p. 2886). The Bill, as amended, was adopted (H.J., p. 2886).

The Senate non-concurred in the House Amendment and requested a Committee on Conference (S.J., pp. 2451, 2452) and returned it to the House (H.J., p. 2945).

A Committee on Conference was named by both houses (H.J., p. 2945, S.J., p. 2600). The Committee on Conference recommended that Senate Bill 518 be amended to add a severability clause as follows:

"The parts of this Act are severable. If any part of this Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains."

The House adopted the Conference Committee report (S.J., p. 2683). The Senate concurred in and adopted the Conference Committee report (H.J., p. 3181). The Lieutenant Governor signed the Bill (S.J., pp. 2719, 2721) and the Speaker of the House signed the Bill (H.J., p. 3307) and it was delivered to the Governor on September 4, 1969 at 5:30 p. m. (S.J., p. 3006). The Governor approved the Bill on September 13, 1969 at 4:02 p. m., Acts, 1969, p. 2082.

3. "A general law within the meaning of this article is a law which applies to the whole state; a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole; a special or private law within the meaning of this article is one which applies to an individual, association, or corporation."

lished in accordance with the requirements of Section 106 of the Constitution, which deals with special, private or local laws. Six Justices opined as follows:

"The said bill does not seek to create a new judicial circuit, but proposes to increase the salary of the judge of an existing circuit and to create an additional judge for such circuit. Under the decisions of this court such an act is not a special, private, or local law and, therefore, § 106 of the Constitution has no application. State ex rel. Montgomery v. Merrill, supra; McCoy v. Jefferson County, 232 Ala. 651, 169 So. 304; Stone v. State ex rel. Courtney, 233 Ala. 239, 171 So. 362."

The provisions of Act No. 1123, repealing all general, special or local laws applicable to the Thirty-first Judicial Circuit which provided for the county to supplement the salary of the circuit judges, was a general law and did not violate Section 110 of the Constitution. Since Judge Delony's term expired concurrent with the effective date of Act No. 1123, there was no decrease of his salary during his term. Amendment 92 of the Constitution, therefore, has no application.

In view of what we have said, the judgment of the trial court is due to be reversed and rendered insofar as it adjudged that Judge Delony was entitled to an increased supplement between December 5, 1968 to January 18, 1971 and reversed and rendered insofar as it adjudged that Judge Delony was entitled to any county supplement after the effective date of Act No. 1123. The judgment is affirmed as to the county supplement due from August 16, 1965 to December 4, 1968.

Affirmed in part, reversed and rendered in part.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH, McCALL and SOMERVILLE, JJ., concur.

MADDOX, J., dissents.

HEFLIN, C. J., recused himself.

MADDOX, Justice (dissenting).

This case was originally assigned to me. The majority agreed with my proposed opinion covering the periods from August 16, 1965 to December 4, 1968 and January 18, 1971 to December 31, 1971, and adopted it as the opinion of the Court. Therefore, I concur with the majority as to these periods. However, I must respectfully disagree with the majority as to the other period, December 4, 1968 to January 18, 1971.

I have read the Constitutional debates on the Judiciary article of the 1901 Constitution in order to try to get a better understanding of the meaning of the Constitutional provisions which faced this Court in this case. As I read the debates and the record of the Constitutional Convention proceedings, there were some suggested changes in the mode and manner of selecting judges. Some of the delegates, though in a definite minority, wanted judges to be appointed during good behavior, as they were in the first Constitution. Constitution, 1819, Article V, § 13. Minority reports were filed to the Judiciary Committee report suggesting that judges be given a four-year term to coincide with the terms of other state executive and legislative officers.

The Convention settled, however, on a six-year term for judges, and provided that the judges should hold their offices for a full term and prohibited the Legislature from affecting this right by any change made by law in any circuit, division, or county, or in the mode or time of election.[4] Decisional law has developed sev-

4. Section 155, Constitution 1901, provides:
"Except as otherwise provided in this article, the chief justice and associate justices of the supreme court, circuit judges, chancellors, and judges of probate, shall hold office for the term of six years, and until their successors are elected or appointed, and qualified; and the right of such judges and chancellors to hold their offices for the full term hereby prescribed

eral principles which I think are helpful in understanding the Judiciary Article of the Constitution. One principle is that the Legislature has the authority to create a new circuit or change an existing circuit and to create an additional judgeship for a new or existing circuit. Section 142, Constitution, 1901; Ex parte Johnson, 203 Ala. 579, 84 So. 803 (1919).

Section 159[5] of the Constitution of 1901 was a new section. Ex parte Johnson, supra. As I read § 159, it deals solely with the mode and manner of selecting judges in *newly created circuits*. The official proceedings of the Constitutional Convention are not too helpful on the reason for the inclusion of this new section in the 1901 Constitution. In Official Proceedings, Constitutional Convention, 1901, Vol. 2, pp. 2304, 2305, the report of the Committee on Judiciary offers some comment:

> "No radical departure has been made from the judicial system of the State as established by the Constitution of 1875, but the Article has been so written as to give more elasticity to the judicial system of the State, so as to enable the Legislature to extend or modify the system, from time to time, as may be necessary to meet the needs of the State as its wealth and population increase, and to make a more economic and systematic arrangement of the system."

> \*   \*   \*   \*   \*   \*

> "The Article as rewritten makes no change in the terms of office of Chancellors, Circuit Judges and Judges of Probate, but provides that, in case of a vacancy in the office, the Governor shall fill such vacancy by appointment, and that such appointee shall hold office until

the next general election held at least six months after the vacancy occurs, and until a successor is elected and qualified, and, further, that whenever any new circuit or chancery division is created, the Judges or Chancellor thereof shall be elected at the next election for representatives to the General Assembly, for a term to expire at the next general election for Judges and Chancellors, provided that if such new circuit or chancery division is created more than six months before the next election of Representatives to the General Assembly, the Governor shall appoint some one as Judge or Chancellor, as the case may be, to hold office until such election."

Since the Report of the Judiciary indicated that the intent of the framers was to "give more elasticity to the judicial system of the State, so as to enable the Legislature to extend or modify the system," I believe this principle should be applied to all legislative acts which deal with this system.

At the time of the 1901 Constitutional Convention, circuit judges were holding office for a term of six years to expire in 1904. Schedule 3 of the Constitution did provide that all judicial officers would continue in office until their terms expired. Insofar as I can determine, neither the 1901 Constitution nor the general law provided for the time when circuit judges would be elected. My research reveals that not until 1915 did the Legislature make provision for the time when certain circuit judges would be elected. Act No. 712, Acts of Alabama, 1915, p. 809, provides:

> "At the general election held in November, 1916, there shall be elected ten

shall not be affected by any change hereafter made by law in any circuit, division, or county, or in the mode or time of election."

5.  Section 159, Constitution, 1901, provides: "Whenever any new circuit or chancery division is created the judge or chancellor therefor shall be elected at the next general election for any state

officer for a term to expire at the next general election for circuit judge and chancellors; provided, that if said new circuit or chancery division is created more than six months before such general election for any state officer, the governor shall appoint some one as judge or chancellor, as the case may be, to hold the office until such election."

judges of the circuit court of the tenth circuit; three judges for the circuit court of the thirteenth circuit; two judges for the circuit court of the eighth circuit; two judges for the circuit court of the fourteenth circuit; two judges for the circuit court of the fifteenth circuit; two judges for the circuit court of the sixteenth circuit; and one judge for every other circuit in the state, all of whom shall hold office for the term of six years."

Act No. 712 is carried in the Code of 1923 as § 415. Similar provisions were adopted in the 1940 Code as Tit. 17, § 67:

"At the general election held in November, 1940, and each six years thereafter, there shall be elected eleven judges for the circuit court of the tenth circuit; three judges for the circuit court of the thirteenth circuit; two judges for the circuit court of the fifth circuit; two judges for the circuit court of the seventh circuit; two judges for the circuit court of the eighth circuit; two judges for the circuit court of the fourteenth circuit; two judges for the circuit court of the fifteenth circuit; two judges for the circuit court of the sixteenth circuit; and one judge for every other circuit in the state; all of whom shall hold office for a term of six years."

Section 158, set out in the majority opinion, as I read it, deals *solely* with the filling of *vacancies* in judicial offices which occur by reason of death, resignation, removal, or disqualification of the incumbent. Section 158 of the 1901 Constitution is substantially the same provision which was adopted and ratified in previous constitutions of Alabama.

Having given a brief history of the judicial article of our Constitution, I would now like to trace the history of the Thirty-first Judicial Circuit. At the time of the adoption of the 1940 Code and the provision which spelled out the mode and manner of the election of circuit judges, Colbert County (now the Thirty-first Judicial Circuit) was part of the old Eleventh Judicial Circuit. Title 13, § 112, Code of Alabama, 1940. The Thirty-first Judicial Circuit was created by Act No. 587, Acts of Alabama, 1953, p. 832, approved September 11, 1953. The judge who was then serving as one of the judges of the Eleventh Judicial Circuit, and who resided in Colbert County, was designated as Judge of the newly created Thirty-first Judicial Circuit,[6] to serve "until the expiration of the term for which he was elected a judge of the Eleventh Judicial Circuit." Thereafter, the judge was to be elected "at the same time and for the same term of office as other circuit judges are elected in the state."[7]

6. Even though the Thirty-first was a new circuit, Section 159 was not applicable, since the Legislature could not abolish the term of the judge of the Eleventh Judicial Circuit. See Section 155, Constitution, as interpreted in Ex parte Johnson, 203 Ala. 579, 84 So. 803 (1920).

7. Unquestionably, the general system for election of circuit judges had been to elect judges for a six-year term at the general election in 1904 and every six years thereafter. Tit. 17, § 67, Code, 1940, established the mode and manner of the election of judges in the circuits therein mentioned. It did not provide for the election of judges in newly created circuits or when additional judgeships were established. After 1940, there were many new circuits and additional judgeships created. I will not attempt to set out the various statutes involved. In most instances, the Legislature provided that where additional judgeships were created, the judges would be appointed until the next general election for state officers. At the next general election for state officers, the judge would run for a term to expire at the general election for *other circuit judges*. The intent of the Legislature was probably to have the terms of all circuit judges to coincide, although I find no provision of the Constitution which requires the Legislature to make all circuit judges' terms to coincide with each other. At least, the provisions in each of these statutes to the effect that these judges shall be elected "as are other circuit judges in this state" is confusing. All circuit judges are not elected for

When the Thirty-fourth Judicial Circuit was created, the Thirty-first Judicial Circuit then consisted of Colbert County solely. Act No. 406, Acts of Alabama, Reg. Sess., 1965, p. 586, carried as Tit. 13, § 112, Code, 1940, Recomp., 1958. Judge Delony became the judge of the Thirty-first Judicial Circuit, and since the Legislature could not diminish his term, he was entitled to complete his term which expired in January, 1971. Ex parte Johnson, supra. When the additional judgeship was created,[8] the Legislature specified the mode and manner in which the new judge would be elected. First, he would be appointed by the Governor and would hold office "until his successor is elected and qualified as provided in Article VI, §§ 158 and 159, of the Constitution of Alabama." Thereafter the additional judge was to be elected "as are other circuit judges in this state."

The majority holds that from the moment the Governor signed Act No. 156, which created the new judgeship, there was a "vacancy," and an "unexpired term" to be filled. While I will admit that as a general rule, a vacancy occurs by reason of the creation of a new judicial office which has never been filled, unless the language of the law creating the office imports futurity of selection (48 C.J.S. Judges § 31, p. 983), I do not believe § 158 should be so interpreted. I must disagree that "vacancy" and "unexpired term" are synonymous. I think the words "unexpired term" which appear in § 158 of the Constitution mean during the time which the

person holding the office would have continued in office if a vacancy had not occurred. See People v. Osborne, 7 Colo. 605, 4 P. 1074 (1884). I think that the word "vacancy" which appears in § 158 of the Constitution was intended by the framers of the Constitution to mean a "vacancy" arising from a contingency in an existing office, occasioned by death, resignation or removal. Cf. O'Leary v. Adler, 51 Miss. 28 (1875). If this was not the intention of the framers, I see no reason for the inclusion of § 159 (dealing with *new circuits*) in the Constitution of 1901. If the majority is correct, the moment a *new circuit* is created, a new judgeship would automatically come into existence under the provisions of § 142 of the Constitution, and a "vacancy" would exist and be filled under § 158. Consequently, there would be no area of operation for § 159. Thus, I think that in every instance where an additional judgeship is created, that the term of the judge thus created should be for an initial term of six years as provided in § 155 of the Constitution. I recognize that the Legislature, except in two instances that I can find,[9] has provided that the additional judge shall have an initial short term. In most cases, the initial appointment is by the Governor, and the appointee has the right to hold office until his successor is elected and qualified at the next general election for state officers. In many cases, the appointed judge becomes his own successor by reason of his election, and holds such office until the

terms which coincide, and the Legislature itself passed the laws which vary the terms. The additional judgeship created by Act No. 347; Acts of Alabama, 1955, p. 796 [Tit. 13, § 125(89), Code, 1940, Recomp., 1958], was elected at the general election in 1956 and every six years thereafter.

The additional judge provided for in Act No. 135, Acts of Alabama, Extra Sess., 1961, p. 2061 provided that the judge would be elected at the general election in 1962 and every six years thereafter.

8. Act No. 156, Acts of Alabama, 1966, p. 182, provides:

"There is hereby created an additional judgeship for the Thirty-first Judicial Circuit. An additional judge shall be appointed for the circuit by the Governor, who shall hold office until his successor is elected and qualified as provided in Article VI, Sections 158 and 159, of the Constitution of Alabama. The judge for the additional judgeship shall be elected thereafter as are other circuit judges in this state."

9. Judgeship No. 2 in the Twenty-third Circuit, and Judgeship No. 13 in the Tenth Circuit.

general election for "other circuit judges," a period of two or four years, depending on each individual case. He then runs for a six-year term.

But even if it is assumed that a "vacancy" existed in Judgeship No. 2 the moment the Governor signed Act No. 156, and even assuming that § 158 of the Constitution is applicable, I would still reach the same result. I think Judge Burt had an "appointed term" and an "elective term," both admittedly of only two-year duration, but nevertheless, fixed by law. "Term," with respect to the tenure of the office of a judge means *the fixed and definite period of time which the law prescribes that he may hold office*. 48 C.J.S. Judges § 20, p. 968. Act No. 156 specifically fixed the term of the appointee of the Governor to expire when his successor was elected and qualified in 1968. In this case, Judge Burt became his own successor, but his right to hold the office under his appointment ended after he was elected and qualified.

I must respectfully disagree with the conclusion reached by the majority that the period from August 19, 1966 to January 18, 1971 was "an unexpired term." To so hold means that there was some portion of a "term" which existed prior to the effective date of Act No. 156. I think the use of the words "unexpired term" in § 158 shows the intent of that section to apply only in those cases where there is a "vacancy" because of the incumbent's death, resignation, or removal. I think the use of the words "unexpired term" in § 158 indicates the framers intended that the word "vacancy" should apply only in cases where an incumbent was filling a term.

Act No. 156 provided that Judge Burt would hold office until his successor was elected and qualified as provided in Article VI, §§ 158 *and* 159, of the Constitution of Alabama. The majority has discussed only the implication of § 158. I will discuss the implication of § 159.[10] Section 159 provides, in part:

> "Whenever any new circuit or chancery division is created the judge or chancellor therefor shall be elected at the next general election for any state officer *for a term to expire* at the next general election for circuit judge or chancellors . . ."

(Emphasis added).

Consequently, if we apply § 159, as we must, since Act No. 156 specifically states that the new judge must be elected and

---

10. In discussing these sections, I do not admit that they should control. Since no provision is made in the Constitution or Statutes for the term of an additional judge as opposed to a judge of a newly created circuit or a judge who is filling an "unexpired term" of another judge, I think § 155 which gives circuit judges a regular six-year term is applicable. While I admit that the Legislature has not given a six-year term to an additional judge save in two instances (Act No. 347, Acts, 1955, p. 796, Tit. 13, § 125 (89), Recomp.Code; Act No. 135, Acts, 1961, Ex.Sess. p. 2061, Title 13, § 125 (47d, 47e), Recomp.Code), I think my reasoning is enforced by the views of Justices Gardner, Bouldin, Brown, Foster and Knight in State ex rel. Foster v. Rice, 230 Ala. 608, 162 So. 292 (1935), where they opined:

"Section 156 (probably 155) of the Constitution empowers the Legislature to change the date of the election of judicial officers. At the same time it safeguards the term of office of the incumbent at the time of such change. It results, as of course, that the Legislature is thus empowered to increase or decrease the interim between their election and entry into office. The Constitution is jealous of the term of office, *assures a full term*, but does not specify when the term begins." (Emphasis added).

While the Legislature has quite regularly provided for additional circuit judges in the state, it has in most instances given them a short appointive term and a short elective term. I feel that what Chief Justice Anderson said in State ex rel. Foster v. Rice, supra, is appropriate:

". . . (C)ustom, or even statutes, cannot override the plain and unambiguous mandate of our organic law."

qualified as provided in §§ 158 *and* 159, I arrive at the following result.

If § 159 is applicable, the result is most confusing. Act No. 156 provides that the Governor shall initially appoint the judge who would hold office until his successor was elected and qualified as provided in § 159. Under § 159, if a *new circuit* was created by Act No. 156, then the judge thereof would have run in the general election held in November, 1966 "for a term to expire at the next general election for circuit judge." (November, 1968, if we use the term of Judge No. 2 of the Twenty-third Judicial Circuit; 1970 when most other circuit judges were elected.) I do not think that is what the Legislature intended. Since the Governor waited until after the November general election to make the appointment, it seems that the executive branch construed the intent of the Legislature to be that the Governor could appoint and the judge appointed would serve a term beginning with his date of appointment and ending when his successor was elected and qualified in the 1968 general election.

The majority quotes from McDonnell v. The State ex rel. Jones, 199 Ala. 240, 74 So. 349 (1917). There, Chief Justice Anderson, in addition to the portion quoted by the majority, wrote for the court:

> " . . . We think that this section (Section 158 of the Constitution) of our organic law is plain and unambiguous, and that it deals *only with vacancies* and the filling of same, and cannot be so reasonably construed as to change, alter, or extend the *term* as fixed by section 155 . . . . " (Emphasis added).

In *McDonnell,* the question was the right of a judge elected to fill an obvious *unexpired term* to hold the office for a full term.[11] I must disagree that *McDonnell* is apposite to the case here which involves the creation of an additional judgeship.

Judge Leonard Burt was appointed to the judgeship created here by Act No. 156 on November 28, 1966. Even if we accept the fact that a "vacancy" existed when the Governor signed the bill, the initial "term" was fixed. It would begin on the effective date of the Act and would terminate when his successor was elected and qualified in the general election of 1968. He was elected as his own successor at the general election in 1968. I think he then began his elective "term."

I think Judge Delony was entitled to the salary supplement from the county during the period from December 5, 1968 to January 18, 1971 because of the provisions of Act No. 195, Reg.Sess., 1967, p. 560, the relevant portions of which Act are quoted in the majority opinion. Since Judge Burt began a new "term" on December 5, 1968, he was entitled to a supplement equal to one-fourth of the salary then paid to him by the State of Alabama. Since Judge Burt became entitled to the supplemental salary because of the expiration of his appointive term and the beginning of his elective term, I think Judge Delony became entitled to the county supplement under the provisions of the last sentence of the Boutwell Amendment, which provides:

> "As to officers who are members of any court, board, commission, or similar body whose terms do not run concurrently, any increase or decrease in the salary,

---

11. The facts of the *McDonnell* case do not appear in the reported decision. I have gone to the original record for these facts. They are as follows: W. T. Lawler was elected Probate Judge of Madison County in November, 1910. He entered upon his term and held the office until June 14, 1916, when he died, thereby creating a vacancy in his term. On July 12, 1916, the Governor appointed A. McDonnell to fill the vacancy. At the general election in November, 1916, Thomas W. Jones was elected Probate Judge and duly qualified. When he attempted to assume office in January, 1917, McDonnell refused to surrender the office, claiming that under Section 158 he was entitled to hold the office until the general election for state officers held more than six months after the vacancy occurred. In other words, McDonnell claimed that the election for Probate Judge held in 1916, when Lawler's term would have expired, was void.

fees, or other compensation of the members of any such court, board, commission or similar body shall become effective as to all such members thereof immediately after the expiration of the term or terms of office of the member or members whose term or terms first expire."

Judge Delony and Judge Burt were "members of the same court." I think their terms did not run concurrently. The majority says that Judge Burt's salary was tied to that of Judge Delony by § 4 of Act No. 156. I must disagree. Act No. 195, Acts, 1967, p. 560, which provides for the county supplement to be paid to (Judge Burt) conflicts with the provisions of Act No. 156, which ties Judge Burt's salary to that of Judge Delony. Act No. 195 repealed all laws which conflicted with it and I feel that § 4 of Act No. 156 was repealed on the effective date of Act No. 195.

The parties argue in brief whether Judge Delony was entitled to have received an increase in his salary from $12,000 annually to $15,000, under the provisions of Act No. 350, approved September 5, 1967, Acts of Alabama, 1967, p. 909, which is carried in the 1958 Recompiled Code as Tit. 13, § 177(1e). Act No. 350 was effective on the first Monday after the second Tuesday in January, 1969.

Although it is not directly presented, appellant categorically states that Act No. 347, Acts of Alabama, 1955, p. 796, is inconsistent with the provisions of § 158 of the Constitution of Alabama. I personally think the appellant is wrong about this for the reasons I have set forth in my dissent, but I see no necessity to discuss whether the $15,000 salary was *validly* paid. As I view the matter, the question is not squarely presented. Act No. 195 very clearly requires the county to pay a supplement "equal to one-fourth of the salary now or hereafter *paid* such judge by the State of Alabama." (Emphasis added.) Judge Delony was paid $15,000 annually by the state.

For the foregoing reasons, I think Judge Delony was entitled to receive one-fourth of the amount paid to him by the state during the period December 4, 1968 to January 18, 1971 ($7,875) instead of the $1,200 annually ($2,500 plus) found to be due by the majority.