**UNITED STATES of America,**
**Plaintiff,**

v.

**W. H. COHAN, Municipal Supt. of Hinesville, Georgia, et al., Defendants.**

Civ. A. No. 2882.

United States District Court,
S. D. Georgia,
Savannah Division.

May 28, 1973.

**1218**

R. Jackson B. Smith, Jr., U. S. Atty., Augusta, Ga., Walter Gorman and Harry C. Piper, Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Charles M. Jones, Donald H. Fraser, Hinesville, Ga., for defendants.

## ORDER

Before BELL, Circuit Judge, LAWRENCE, Chief Judge, and ALAIMO, District Judge.

LAWRENCE, Chief Judge:

In 1971 the General Assembly of Georgia amended the charter of the City of Hinesville so as to establish a new system of electing members of the municipal council. Under the prior law the five candidates obtaining the highest number of votes were declared elected. Effective at the election in October, 1971, a "post" system of election to such office was substituted. "Positions on the council shall be numbered 1 through 5, respectively" and candidates were required to designate by number the position on the council for which they offer. A majority of the vote is necessary both as to councilmen and mayor.[1]

Pursuant to the Voting Rights Act of 1965 (42 U.S.C. § 1973c), the municipal authorities of Hinesville submitted the changed voting procedure to the Attorney General of the United States for approval. On October 1, 1971 (five days before the election) he objected to the "post" system. He stated that "Based on all the available facts and circumstances, we are unable to conclude, as we must under the Voting Rights Act, that these changes will not have a discriminatory racial effect on voting."[2]

The election was nevertheless held under the new system.

On October 22, 1971, the Government filed this action seeking a declaration by a three-judge court that the charter amendment violated Section 5 of the Voting Rights Act and an order requiring new elections to be held within a reasonable time. Among the defendants are the elected councilmen.

A hearing was held before a single district judge at Savannah on October 29, 1971. At the conclusion thereof the request for a three-judge court was denied. An order was entered holding that the election of the city councilmen was unlawful because of the Attorney General's objection to and failure to approve the

---

1. Georgia Laws, 1971, p. 3933. The prior law (Georgia Laws, 1959, p. 2605) merely provided that the "election shall be held for mayor and five councilmen." Nothing was said about obtaining a majority of the vote. Apparently by practice or interpretation only a plurality of the vote was required.

2. Section 5 of the Voting Rights Act of 1965 provides that where a State or political subdivision enacts any voting qualification, standard or procedure different from that in force or effect on November 1, 1964, it may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that the purpose and effect of the change will not deny or abridge the right to vote on account of race. However, changes in voting procedures may be enforced without resort to that Court if same have been submitted to the Attorney General of the United States and he has not interposed an objection within sixty days after such submission. 42 U.S.C. § 1973c. The constitutionality of these provisions was upheld in South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966).

"post" system. The Court directed that a new election be held in October, 1972.[3]

That ruling was reversed on appeal upon jurisdictional grounds. The Fifth Circuit held in December, 1972, that 42 U.S.C. § 1973c necessitates a hearing and determination by a court of three judges and that two "important" and "substantial" questions existed as to the application of Section 5 of the Voting Rights Act. The issues are: (1) Is the new "post" voting procedure "different" from that in force on November 1, 1964? and (2) May the Attorney General "only object to the procedure without justifying his objection?" See United States v. Cohan et al., 470 F.2d 503 (5th Cir.).

Pursuant to that ruling, a three-judge court was convened and a hearing held at Savannah on February 9, 1973.

The first issue for determination raised by the Court of Appeals can be disposed of quickly. Neither at the single judge nor the three-judge hearing did defendants contend that the "numerical post" system was not a "different" voting procedure from the prior at-large election of councilmen.

■ The second question that the Circuit Court says should be considered is whether the Attorney General may merely enter an objection to the submitted change, unsupported by reasons or reasoning and without any explicit finding of any racially discriminatory effect of the new voting procedure. The question before us is whether or not there was valid federal scrutiny of the submitted voting change.

Following the hearing, we deferred a ruling in view of the pendency of a case in the Supreme Court of the United States scheduled for argument later that month. Among the questions there presented to the highest Court was the authority of the Attorney General to disapprove submitted changes in voting procedures when he is unable to conclude that there is no discriminatory racial effect. Counsel for the State of Georgia attacked the rule as to burden of proof prescribed by the Attorney General in the "standards" adopted by him for the administration of Section 5 of the Act, asserting that they are without statutory basis.[4]

On May 7th the Supreme Court of the United States handed down its decision. See State of Georgia et al. v. United States, 409 U.S. 911, 93 S.Ct. 232, 34 L.Ed.2d 172. The ruling settles the point at issue against the defendants in this case. It was held that although the "choice of language in the objection letter sent to the State of Georgia was not a model of precision, in the context of the promulgated regulations the letter surely notified the State with sufficient clarity that it had not sustained its burden of proving that the proposed changes were free of a racially discriminatory effect." The majority of the Court thought that the Attorney General's choice of a proof standard was "reasonable and consistent with the Act, and . . . that his objection pursuant to that standard was lawful and effective." [5]

---

3. This part of the Order was later stayed in view of the fact that the Court of Appeals had not made a ruling by the time set for the new election of aldermen.

4. The "standards" provide that (a) since the Act imposes on the Attorney General "what is essentially a judicial function" the burden of proof is on the "submitting authority" as it is in the case of submission of voting changes to the District Court for the District of Columbia; (b) the Attorney General's "decision" shall be based on the material presented and other relevant evidence; (c) if he is satisfied that there is no "racially discriminatory purpose or effect, he will not object to

the change;" (d) if he determines that it has such a design or result, he will file an objection; (e) should the evidence be conflicting and the Attorney General is unable to resolve the conflict within the 60-day period, he shall, consistent with the above-described rule as to burden of proof enter an objection. See 28 C.F.R. § 51.19.

5. Three Justices dissented to this holding. Mr. Justice Powell said that the Attorney General should invoke Section 5 "only when he is able to make an affirmative finding rather than an ambivalent one." 93 S.Ct. 1702.

**1220**

## ORDER

It is Ordered and Adjudged as follows:

(1) The "post" voting system as set forth in Section 6 of the Charter of the City of Hinesville, Georgia, relating to election of members of the City Council violates Section 5 of the Voting Rights Act of 1965.

(2) That a new election be held for members of the Council not later than October 3, 1973, under and pursuant to the previous election provision of the Charter. Candidates therefor shall run at large against each other, with the five receiving the greater number of votes being elected to the unexpired term of the present incumbents.

(3) The present members of City Council shall serve until their successors have been elected and take office.