Jim ROBINSON et al.,
Plaintiffs-Appellees,

v.

J. Stanley POTTINGER, Asst. Attorney General of the United States of America et al., Defendants,

William P. Nunn et al.,
Intervenors-Appellants.

No. 74–3486.

United States Court of Appeals,
Fifth Circuit.

April 24, 1975.

See also, D.C., 376 F.Supp. 615.

William R. Gordon, Montgomery, Ala., for intervenor-appellant.

Joseph D. Phelps, Charles A. Stakely, Jr., Montgomery, Ala., for Robinson and others.

Ira DeMent, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., Gerald W. Jones, Marie Klimesz, Attys., U. S. Dept. of Justice, Washingtin, D. C., for Pottinger and others.

Solomon S. Seay, Jr., Montgomery, Ala., for Charles Varner, Jr.

Before GEWIN, BELL and CLARK, Circuit Judges.

PER CURIAM:

The only issue presented on this appeal is whether Act 618, Acts of Alabama, Regular Session 1973, commonly known as the Mayor-Council Act of 1973, is a general act of local application and therefore valid, or a local law and therefore invalid because it was not advertised as such pursuant to state constitutional and statutory provisions. We affirm the judgment of the district court holding that the Act is a general law of local application and is constitutional.

This case originated as a class action filed by the plaintiffs-appellees on behalf of all registered voters in the city of Montgomery, Alabama, seeking a declaratory judgment as to the constitutionality of the Mayor-Council Act. The Act provides a means by which cities having a population of not less than 70,000 nor more than 135,000 may adopt the mayor-council form of government. The City Attorney of the City of Montgomery

submitted the Act to the Attorney General of the United States for approval under the provisions of § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq. See Georgia v. United States, 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966).

Assistant Attorney General J. Stanley Pottinger, Civil Rights Division, responding for the Attorney General, informed the City Attorney that "the Attorney General does not interpose an objection to the changes involved" in the Act. In his letter, however, the Assistant Attorney General did question[1] the constitutionality of two provisions of the Act, one requiring qualifying fees from candidates[2] and the other requiring that mayor and city council candidates receive a majority, rather than a plurality, of the vote.[3]

Upon learning of the questions raised by Mr. Pottinger, Montgomery Mayor Jim Robinson and certain other citizens brought this class action seeking a declaratory judgment as to the constitutionality of the Mayor-Council Act in order to remove the "cloud of uncertainty" which they claimed had been caused by the Assistant Attorney General's letter. Their complaint sought a judgment that the sections of the Act referred to by Mr. Pottinger were constitutional. The named defendants were Attorney General William Saxbe, Assistant Attorney General Pottinger, and Perry O. Hooper, the probate judge of Montgomery County who is charged with administering elections and referenda in Montgomery.

William P. Nunn and others moved to intervene in the action and their motion was granted. In their cross-complaint, the intervenors raised, for the first time in the litigation, the issue which is before us on appeal, whether the Mayor-Council Act is a "local law" and therefore invalid because it was not advertised pursuant to Alabama law before enactment.[4]

■ Defendants Saxbe and Pottinger asserted that the district court did not have jurisdiction over them and moved to dismiss. This motion was denied. However, they did not appeal since the district court did not order any relief against the United States. In a brief filed on this appeal, these federal defendants stated "there would appear to be no federal interest at stake in this appeal."[5]

1. Under § 5 of the Voting Rights Act we are doubtful that the Attorney General is authorized to render advice or suggestions as to the validity of the legislation of the type here involved if he renders no objection to the legislation. The Act authorizes the Attorney General to object to state voting legislation, to render no objection to the same, or to make no response—which is considered tantamount to no objection. In this case, as indicated, he rendered no objection but suggested the existence of possible constitutional infirmities.

2. Act 618, §§ 3.02, 4.02, Acts of Alabama, Regular Session 1973.

3. Act 618, §§ 1.07, 4.01, Acts of Alabama, Regular Session 1973.

4. An additional party, Charles Varner, Jr., made an appearance before the district court and alleged that the council district lines as they were then drawn resulted in a dilution of black voting strength. Since that time, the lines have been revised and Varner has stated to the district court that he has no further objections. Varner has not appealed.

5. Although none of the parties to this appeal have questioned the jurisdiction of either the district court or this court to consider the issues presented, supplemental briefs dealing with that issue were requested at oral argument. The plaintiff-appellees contended that their complaint as amended was predicated on the following: the 14th Amendment to the Constitution; Title 28 U.S.C. § 1331, authorizing actions arising under the Constitution, laws or treaties of the United States; Title 28, U.S.C. § 1343, authorizing redress for the deprivation of elective franchise under state law; Title 28 U.S.C. §§ 2201 and 2202, providing for declaratory judgments; and the Administrative Procedure Act, Title 5 U.S.C. § 702. The appellees further asserted that, as voters of the city of Montgomery, they were directly, substantially, and adversely affected by the constitutional challenges made by Assistant Attorney General Pottinger and by "the cloud of

The district court found §§ 3.02 and 4.02 dealing with qualifying fees violative of equal protection and ordered them deleted from the Act. The court rejected the contention that §§ 1.07 and 4.01 requiring a plurality vote affected a dilution of individual voting rights. After ordering the appendix establishing district lines for Montgomery severed from the Act, the court found that the Act was complete, intelligible, and capable of being validly executed, and that the Act was a general, rather than a local law, and therefore was valid. It is this issue alone that is before us on appeal: whether the Mayor-Council Act of 1973 is a local law as opposed to a general act of local application, which was not advertised and is therefore unconstitutional.

The decree and judgment of the district court is attached hereto as Appendix A. We conclude that the appellants have failed to demonstrate that error was committed. Since the district court retained jurisdiction of this litigation pending the adoption of district lines by the City Commission within a specified time, we affirm the judgment and remand the case for such proceedings as may be appropriate. The mandate shall issue immediately.

Affirmed and remanded.

## APPENDIX A

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

JIM ROBINSON; ET AL,
Plaintiffs,

VS.

J. STANLEY POTTINGER, Etc.;
ET AL,
Defendants.

CIVIL ACTION
NO. 74-49-N

## JUDGMENT

This cause is now submitted for final determination upon a stipulation of facts and briefs of the parties. The Plaintiffs and the class they represent bring this suit for a declaratory judgment seeking to have declared the constitutionality of Act No. 618, Acts of Alabama, Regular Session 1973. Act 618 is, allegedly, a general act of local application providing a method by which cities having a population of not less than 70,000 nor more than 135,000 might adopt the mayor/council form of government. In anticipation of utilizing this method of governmental change and of giving the voters of Montgomery an opportunity to adopt the mayor/council form of government, the City Attorney submitted Act 618 to the Attorney General of the United States on December 7, 1973, for approval pursuant to the Civil Rights Act of 1965 (42 U.S.C. § 1973 et seq.). The Attorney General of the United States, through his assistant, J. Stanley Pottinger, responded on February 4, 1974, by expressing no objection to the Act based upon his duties under the Civil Rights Act of 1965. However, he did question the constitutionality of two portions of the Act. The Plaintiffs, upon discovering that questions had been raised by the Attorney General filed their bill for declaratory judgment action on February 20, 1974.

The Court on February 22, 1974, found that the suit was properly maintainable as a class action and required notice to be given the prospective class members. On March 18, 1974, William P. Nunn, Paul L. Smith and L. N. Duncan intervened in the case, through their attorney, William R. Gordon, and challenged the constitutional validity of the Act. On the same day, Charles Varner, Jr., made an appearance in the suit, through his attorney, Solomon S. Seay, Jr., and questioned the validity of the council district lines as drawn by the Alabama Legislature and as attached as an appendix to the Act.

The contention of Charles Varner, Jr., is moot since he stated in the proposed submission filed on August 8, 1974, that

uncertainty" which arose as a result of the opinions volunteered by Mr. Pottinger. As indicated in footnote 4, *supra*, one of the intervenors, during the course of the proceedings, alleged that the Act had a dilutive effect on minority voting strength in some instances. We are convinced that the allegations of the complaint were sufficient to confer jurisdiction on the district court.

he would accept the district lines drawn anew by the Plaintiffs.[1]

The Interveners raised numerous objections to the validity of Act 618, only three of which they insist upon in brief. Two of these questions were initially raised by Pottinger. They are (1) whether § 3.02 and § 4.02, requiring a qualifying fee from candidates, is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution and (2) whether §§ 1.07 and 4.01, requiring that a candidate for the office of mayor receive a majority of the vote rather than a plurality, is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The third question in two parts is (a) whether the Act is general or local as defined by Alabama law and (b) whether, if the Act is local, failure to advertise the Act renders it void as violative of the State Constitution.[2] The parties stipulate that the Act was never advertised as a local act.

This Court is of the opinion that Act 618 is general in nature and is, therefore, valid. "It is the duty of the courts to sustain the constitutionality of a legislative act unless it is clear beyond a reasonable doubt that it is in violation of the fundamental law." State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283; Norton v. Lusk, 248 Ala. 110, 26 So.2d 849; Brittain v. Weatherly, 281 Ala. 683, 207 So.2d 667. It is further the duty of the courts not to construe a law as local, when it is worded and framed in a way which allows interpretation as a general law, even though interpretation as a general law is less natural than interpretation as a local law. State ex rel. Collman v. Pitts, 160 Ala. 133, 49 So. 441; State ex rel. Montgomery v. Merrill, 218 Ala. 149, 117 So. 473; Brittain v. Weatherly, supra.

It has been consistently held that, a law is general even though an act when passed applies to one city only, if the act will apply to all other cities as they come within the class described by the law. Taxpayers and Citizens of City of Mobile v. Board of Commissioners of City of Mobile, 252 Ala. 446, 41 So.2d 597; Reynolds v. Collier, 204 Ala. 38, 85 So. 465; Brittain v. Weatherly, supra.

Population is the basis of classification used by the Legislature in this type legislation and scrutinized by the courts for constitutional validity. The Alabama Appellate decisions hold that, where there is a substantial difference in population and the classification is made in good faith, reasonably related to the purpose to be effected and to the differences in population which forms the basis thereof and is not merely arbitrary, it is a general law. Reynolds v. Collier, supra; Opinion of the Justices, 275 Ala. 409, 155 So.2d 513.

Act 618 proposes "to provide a form of municipal government to be known as the Mayor-Council form of government, which may be adopted by any city in the State of Alabama having a population of not less than 70,000 nor more than 135,000." Act No. 618, Acts of Alabama, Regular Session 1973, page 879.

Upon review of Act 618 and in comparison with previous legislative acts of a similar nature declared constitutional by the courts, it is the opinion of this Court that the population classification involved in Act 618 is established in good faith and reasonably relates to the purpose to be effected and to the difference in population which forms the basis thereof. In Brittain v. Weatherly, supra, the Court approved a population classification of between 30,000 and 45,000 in a similar legislative act.

The Interveners, however, do not strongly argue the invalidity of the population classification but, rather, attack

---

1. This may present further problems as to the approval by the Attorney General heretofore obtained.

2. "Sec. 106. No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, * * *."

the Act's inapplicability to any city in Alabama other than Montgomery. They point out that the Legislature included as an appendix to the Act a specification of the initial council districts, designating the geographical location of those districts by reference to Montgomery landmarks and street names. Furthermore, in the body of the Act at §§ 1.07 and 7.01 reference is made to the appendix as the source of the initial council districts. The procedure for establishing the initial council districts which is provided in the Act is clearly applicable to Montgomery only. No other means of establishing initial council districts is set forth in the Act.

The question before the Court then is whether, in the absence of a provision for the establishment of initial council districts for cities other than Montgomery, the law must be considered a local law. The test is, not whether the Act is applicable to only one city at its inception, but whether other cities might be able to use the Act at some future time. Reynolds v. Collier, supra; Brittain v. Weatherly, supra. The claimed deficiency in the Act is its failure to provide a procedure by which initial council districts might be adopted by other cities. While this deficiency might lead to confusion in the implementation of the Act, it may not rise to the significance of constitutional fatality if the Code otherwise provides a procedure therefor.

Embodied in the general laws of municipal corporations are various provisions empowering the governing bodies of the municipalities by ordinance to draw districts or wards for the purpose of furthering governmental ends. Code of Alabama, Title 37, §§ 7 and 96.[3] In the absence of any valid provision in Act 618 providing a method of drawing districts, these provisions of the Alabama Code must be consulted. The duty of

establishing initial council districts falls upon the existing governing body of the municipality seeking to utilize the law. Subsequent redistricting shall be accomplished in accordance with the provisions of Act 618.

The initial district lines having been drawn by the State Legislature for Montgomery alone, they constitute provisions purely local in nature. As such, they cannot stand with an act of an otherwise general character.

Furthermore, the appendix is an addition to the Act not referenced in the title and, as such, is void. Wilkins v. Woofe, 281 Ala. 693, 208 So.2d 74; Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694. Section 45 of the Alabama Constitution requires that any subject matter covered in the Act must be summarized in the title or that portion of the Act is void. The fact that a portion of the Act fails for this reason does not render the whole Act void. State ex rel. Clarke v. Carter, 174 Ala. 266, 56 So. 974; State ex rel. Harmon v. Murphy, 211 Ala. 663, 101 So. 465. Therefore, the appendix must be severed from the Act.

The Plaintiffs contend that, even though this portion of the Act should be rendered void, the district lines may still be drawn or approved by this Court. In support of this proposition, the Plaintiffs cite Yelverton v. Driggers, 370 F.Supp. 612 (M.D.Ala.1974) and Mahon v. Howell, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973). These cases, however, are inapplicable. In *Yelverton*, the Court has not attempted the redistricting. It stayed the case so as to afford local authority an opportunity to perform a local duty. The Court in *Mahon* was called upon to determine the validity of districts drawn by a body empowered to do so, which erroneously performed its duty to redistrict, and in so judging, the Court

---

**3.** "§ 7. The councils of the several cities may, by ordinance, divide such city into not less than three nor more than fourteen wards, except as otherwise provided herein, and the numbers and boundaries of such wards may be fixed and changed at any time, except as herein restricted."

"§ 96. The commissioners of such city, to be known as the board of commissioners of such city, shall have, possess and exercise all the powers and authority, legislative, executive and judicial, theretofore possessed by the mayor, or governing body or bodies of said city, by whatsoever name called, * * *."

assumed the duty to supervise a valid drafting of district lines after local authorities had failed. This Court is called upon to, in effect, establish anew the initial districts for Montgomery and, thereby, by-pass the procedure set up by State law. Code of Alabama, Title 37, §§ 7, 96. While the initial districts established by the Alabama Legislature as amended and agreed to by parties to this cause, in the light of suggestions by the Plaintiffs' attorneys and Charles Varner's attorney may be helpful, they are not legally binding. The initial district lines must be drawn by the Board of Commissioners of the City of Montgomery. Absent a showing that that group, acting under color of State law, has abrogated its official duty, this Court should not exercise its broad equity powers to interfere. Swann v. Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554, see also Yelverton v. Driggers, supra, 370 F.Supp. at 619.

In his letter of February 4, 1974, the Attorney General raises two questions which cast doubt upon the constitutional validity of Act 618. The Interveners join in raising these questions and argue these points in brief. They argue, first, that § 3.02 and § 4.02 of the Act, requiring that a qualifying fee accompany a statement of candidacy, denies equal protection of the laws. This argument is convincing in view of the recent Supreme Court decision of Lubin v. Ponish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702. The Court reviewed California statutes which require that qualifying fees accompany the statement of candidacy. The Court held that, in the absence of reasonable alternative means of ballot access, a state may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay.

Section 3.02 provides that the statement of candidacy for the office of councilman "*shall* be accompanied by a qualifying fee in the amount of $150.00" (emphasis added). Section 4.02 provides that the statement of candidacy for the office of mayor "*shall* be accompanied by a qualifying fee in the amount equal to $300.00" (emphasis added). No alternative means of ballot access is provided by the Act. Therefore, it is the opinion of this Court that the portions of §§ 3.02 and 4.02 which deal with qualifying fees deny equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

The fact that §§ 3.02 and 4.02 are unconstitutional does not, however, render the entire Act impotent. Section 11.02 provides:

"If any section or part of section of this act shall be held invalid by a court of competent jurisdiction, such holding shall not affect the remainder of this act nor the context in which such section or part of section so held invalid may appear, except to the extent that an entire section or part of section may be inseparably connected in meaning and effect with the section or part of section to which such holding shall directly apply."

The provisions of §§ 3.02 and 4.02 requiring a filing fee may be deleted from the Act and the meaning and effect of the Act will be unaltered. Applicants seeking to qualify for the ballot would then be required to meet all the prerequisites set out in the Act with the exception of the filing fee requirement. The courts have consistently given effect to separability clauses. See Opinion of the Justices, 284 Ala. 626, 227 So.2d 396; Hamilton v. Autauga County, 289 Ala. 419, 268 So.2d 30. It is the opinion of the Court that this portion of Act 618 is separable.

The second question raised by the Attorney General and argued by the Interveners is whether §§ 1.07 and 4.01 of the Act affect a dilution of the individual's voting rights. This contention by the Interveners, in the opinion of this Court, is without merit.

The Interveners cite Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, for the proposition that a person's individual vote should not be diluted by any means. There is no question that this is the law. However, no dilution of individual votes is perpetrated by this

Act and the Interveners have cited no cases that hold otherwise.

Interveners also cite in support of their proposition Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971) and White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973), which cases they admit are not directly in point. These cases deal with the propriety of multi-member districts in certain situations where there was strong evidence that the purpose of the districting was to deny voting strength to minority groups. Here we have single-member districts and the Attorney General has indicated that the proposed districting "does not have the purpose * * * or effect of abridging" voting privileges on account of race. Act 618 provides that the mayor shall be elected at large and the councilmen shall be elected from single-member districts.

The Court, having been cited no cases supporting the Interveners' position and having scrutinized the election process as described in the Act, is of the opinion that no individual's voting strength is diluted thereby.

While certain portions of Act 618 have been held invalid, the purpose of the Act can still be accomplished by implementation of the remaining sections. In view of the lengthy delay already caused by administrative and judicial examination of the Act and in view of the right of the City's citizenry to either accept or reject the proposed change of government, the Court is of the opinion that the proposed change of government should be submitted to the voters as soon as is reasonably possible. Before submission to the voters can be contemplated, however, initial council districts must be drawn. As heretofore pointed out, the responsibility therefore rests with the presently constituted governing body of the City of Montgomery, that being the City Commission of the City of Montgomery. The proposed districting must thereafter be submitted for approval of either the Attorney General of the United States or of the United States District Court for the District of Columbia pursuant to 42 U.S.C. § 1973c.

Council districts have been drafted both by the parties which, if adopted by the City Commission, apparently would not "have the purpose and [would] not have the effect of denying or abridging the right to vote on account of race or color" (parenthetical expression added), within the requirements of 42 U.S.C. § 1973c. The City Commission may wish to draft a different set of districts, however. This they have a right to do. The Court is of the opinion that a period of 30 days is a reasonable time within which to either approve one of the tentative drafts already submitted to the Court or draft district lines anew. It is the

Order, judgment and decree of this Court as follows:

1. That Act No. 618, Acts of Alabama, Regular Session 1973, be, and the same is hereby, declared to be general in nature;

2. That the district lines drawn by the Legislature for the City of Montgomery are provisions purely local in nature and, not having been advertised, are invalid and are hereby stricken from the Act;

3. That the portions of §§ 3.02 and 4.02 dealing with qualifying fees be, and the same are hereby, deleted from the Act, leaving intact the remainder of §§ 3.02 and 4.02; and

4. That §§ 1.07 and 4.01 of Act 618 be, and the same are hereby, declared to be constitutional.

This Court retains jurisdiction of this matter pending the adoption of district lines by the City Commission within 30 days from the date of this order.

Done this 10th day of September, 1974.

/s/ R. L. Varner
United States District Judge