UNITED STATES of America, Plaintiff,

v.

BOARD OF COMMISSIONERS OF SHEFFIELD, ALABAMA, et al., Defendants.

Civ. A. No. 76–M–1086.

United States District Court, N. D. Alabama, Northwestern Division.

Dec. 13, 1976.

On Motion for Reconsideration March 31, 1977.

Probable Jurisdiction Noted June 27, 1977. See 97 S.Ct. 2970.

Wayman G. Sherrer, U. S. Atty., Caryl P. Privett, Asst. U. S. Atty., Birmingham, Ala., Edward H. Levi, Atty. Gen., J. Stanley Pottinger, Asst. Atty. Gen., Gerald W. Jones, Sheila K. Delaney, Dept. of Justice, Washington, D. C., for plaintiff.

Vincent McAlister, and Braxton Ashe, Almon, McAlister & Ashe, Sheffield, Ala., for defendants.

## MEMORANDUM OPINION

Before RIVES, Circuit Judge, and GROOMS and McFADDEN, District Judges.

McFADDEN, District Judge.

The Attorney General of the United States initiated this action pursuant to the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, seeking to enjoin the implementation of a proposed change in the form of the government of the City of Sheffield, Alabama, to the extent that it provides for an at-large method of electing city councilmen until federal pre-clearance by either of the two statutorily required methods has been obtained.

On March 20, 1975, the City of Sheffield, pursuant to Section 5 of the Voting Rights Act, submitted to the Attorney General of the United States for pre-clearance a proposal for conducting a referendum to determine "whether the present commission form of government shall be abandoned in favor of the Mayor and Aldermen form of government." The Attorney General did not object to the holding of the referendum, but cautioned that the change to the new form of government remained subject to the pre-clearance requirements of Section 5. The voters of the City approved the referendum on May 13, 1975, thereby authorizing a change from a Commission form of government to a Mayor-Council City Government. On October 23, 1975, the Attorney General received the City's submission for pre-clearance of the change to the Mayor-Council Government, which the City contends was unnecessary, but done out of an abundance of caution. On December 22, 1975, the Attorney General requested additional information, which he received on May 5, 1976. On July 6, 1976, the Attorney General interposed an objection to the proposed at-large method of electing City Councilmen under the new form of government and on August 9, 1976, initiated an action seeking to enjoin the election of City Councilmen under the new plan.

This Court, on September 29, 1976, denied plaintiff's request for an injunction and dismissed its complaint on the basis that the Attorney General's objection of July 6 was untimely; thereafter this Court was asked by plaintiff to reconsider the Court's ruling of September 29. The September 29 ruling provided, inter alia, the following:

Plaintiff merely offers the Executive Order to demonstrate that Monday, July 5, was a 'federal holiday,' citing the Executive Order without more. No evidence of the number or percentage of federal employees excused under the Executive Order was presented to the Court. The Court is of the opinion that plaintiff has failed in its burden to establish an exception to the rule [that a limitations period should be allowed to run unmolested unless an exception is demonstrated] and accordingly the objection was untimely.

This Court remains of the opinion that plaintiff failed at trial and in its post-trial brief to demonstrate that July 5, 1976, was a federal holiday for employees of the Justice Department; however, after considering the Government's Rule 59, Fed.R. Civ.P., motion and in taking cognizance of the affidavits filed therewith, the Court is now satisfied that July 5 was a federal holiday for employees of the Justice Department, making July 6 the next full business day for the Attorney General which under his regulations would make the objection timely. (We assume the validity of the regulation for the purpose of this case, but express no opinion thereon.) Accordingly, the Court is of the opinion that plain-

tiff's Rule 59 motion is due to be granted to the extent that July 6, 1976 was the next full business day for the Attorney General and his employees; therefore making the objection timely. 28 C.F.R. § 51.3(c).

Since the Court, in its opinion of September 29, did not address several issues, it is now necessary to do so.

1. Is the City of Sheffield, Alabama, a "political subdivision" as defined by the Act and as reflected by the Act's legislative history?

2. Did the Attorney General's approval of the referendum have the force and effect of also approving the change from a Commission to a Mayor-Council form of government?

■ This Court previously held that the City of Sheffield was covered by the Act, relying on *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), but upon further analysis the Court is of the opinion that this was error. *Perkins* involved the City of Canton, Mississippi, and the Court in a footnote without discussion stated that Mississippi and its subdivisions were covered. (400 U.S. 382, n. 2, 91 S.Ct. 431)

All reported cases which the Court has found applying the Voting Rights Act to municipalities have involved either state legislative enactments clearly subject to the Act, such as did *Robinson v. Pottinger,* 512 F.2d 775 (5th Cir. 1975), and *United States v. Cohan,* 358 F.Supp. 1217 (S.D.Ga.1973); or they involved cities which do in fact conduct or supervise registration of voters. Of the latter type are *Perkins v. Matthews, supra* (see Miss. Code Ann. § 21–11–3); *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (see

Code of Va. Tit. 24.1, §§ 43–46, Cum.Sup. 1976);[1] *United States v. Garner,* 349 F.Supp. 1054 (N.D.Ga.1972) (see Ga. Code Ann. § 34A–502); and *Beer v. United States,* 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976) (see La.Rev.Stat. §§ 18:270.101, 18:270.105, and 18:207.301, Cum.Sup. 1976). [2]

Designated states and subdivisions under the Act are subject to the pre-clearance procedures of section 5, when they "enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 . . . ." 42 U.S.C. § 1973c, as amended. The Attorney General's designation of a state implies his designation of its political subdivisions. 1965 *U.S.Code Congressional and Administrative News,* pp. 2456, 2561. Political subdivision is clearly defined in the Act, 42 U.S.C. § 1973*l*(c)(2): "The term 'political subdivision' shall mean any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting."

The legislative history of this section makes it clear that this section was intended as a restriction on the coverage of the Act.

Clause (2) of this subsection is new. It defines 'political subdivision' as a county or parish except that in those instances where registration is not conducted under the supervision of a county or parish, the term includes any other subdivision of a State which conducts registration for voting. This definition makes clear that the term 'political subdivision' is not intended

1. The statement in *Allen* that § 5 applies to city as well as county governments is consistent with § 1973*l*(c)(2) in that, "In Virginia, cities and counties are mutually exclusive." *Holt v. Richmond,* 459 F.2d 1093 (4th Cir. 1972).

2. The government of the City of New Orleans and Parish of Orleans is *sui generis* in the State of Louisiana. The boundaries of the city and the parish are coextensive, and there is no general administrative body for the govern-
ment of the parish, the City Council of New Orleans performing the duties which are performed in other parishes by the parochial governing bodies. Registration of voters is conducted by the Registrar of the Parish of Orleans, who is, however, appointed by the City Council, which provides that official with office space and pays that portion of his salary which is in other parishes the responsibility of the parish authorities.

to encompass precincts, election districts, or other similar units when they are within a county or parish which supervises registration for voting.

1965 *U.S.Code Congressional and Administrative News,* p. 2569; see also p. 2464.

Under Alabama law municipalities neither conduct nor supervise registration of voters. All registration powers are vested in County Boards of Registrars which furnish voter lists to municipalities. Tit. 17, § 21, Code of Alabama (Recomp. 1958); see also Tit. 37, § 34(35) Code of Alabama (Cum.Supp. 1973). Accordingly, this Court is of the opinion that the City of Sheffield is not covered by the Voting Rights Act of 1965. It is a political unit, but within a county which supervises registration for voting; therefore, falling outside the definition of "political subdivision" as defined by the Act and the legislative history thereof.

■ This Court is further of the opinion that by approving the referendum the Attorney General in fact approved the change to the Mayor-Council form of government notwithstanding his caution to the City that the change was also subject to pre-clearance.

After the referendum was adopted, the Attorney General objected to the new form of government on the basis of the at-large method of electing the City Councilmen and indicated a preference for separate election districts. He did not object to the at-large method of electing the Mayor or the Council President. Prior to approval of the referendum the Attorney General was made aware that under the law of Alabama, if the referendum was adopted, the City would be obliged to follow the directive of Tit. 37, § 426, Code of Alabama (Recomp. 1958), which provides, inter alia, for the at-large election of Mayor, Council President and City Councilmen. The Attorney General's approval of the referendum may be characterized in one of the two ways. First, his approval of the referendum carried with it an implicit approval of the new government. Secondly, his approval of the referendum terminated his authority

under the Act to further oversee the results of the referendum, since the new government thereby adopted is mandated by Alabama law.

Accordingly, it is the opinion of this Court that the Attorney General's approval of the referendum, paired with his actual or constructive knowledge of Tit. 37, § 426, precludes further objection to the City's new form of Government.

Other courts have called the Attorney General's authority into question in voting right cases. The case of *Jenness v. Little,* 306 F.Supp. 925, 927 (N.D.Ga.1969), appeal dismissed sub nom., *Matthews v. Little,* 397 U.S. 94, 90 S.Ct. 820, 25 L.Ed.2d 81 (1970) (three-judge district court), involved an attack on the validity of a municipal ordinance requiring the payment of qualifying fees by candidates for municipal offices. The Court in *Jenness* held the ordinance unconstitutional but rejected a contention that it required the Attorney General's approval:

> The contention that the new ordinance establishing a new schedule of fees had to likewise be approved by the Attorney General is rejected. This ordinance was adopted pursuant to the Georgia Municipal Election Code of 1968, supra, which expressly permitted the exaction of qualifying fees (Ga.Ann.Code Supp. § 34A–904) and that Act has been approved by the Attorney General in compliance with the Voting Rights Act, supra.

■ This Court is likewise of the opinion that the Attorney General may not, by authority of the Act, continue to oversee the results of a "change" he has approved.

In the instant case, the at-large method of electing City Councilmen followed as a matter of law under Tit. 37, § 426, when the voters of the City adopted the referendum. The Attorney General approved the change in form of government and now wishes to object to the specific effects which are required under Alabama law. The Attorney General's approval of the change in form of government in which the features now found objectionable were incorporated as a

matter of law exhausted his authority under the Voting Rights Act to further oversee the consequences of that approval. By approving the referendum the Attorney General at least implicitly approved the change that followed. The Act is not designed to allow an uninterrupted surveillance by the Attorney General of "changes" he has approved. Challenge of a "change," approved by the Attorney General, is given to private action by those with standing. *NAACP v. New York,* 413 U.S. 345, 352, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); *Beer v. United States,* 425 U.S. 130, 96 S.Ct. 1357, 1364, 47 L.Ed.2d 629 (1976).

Accordingly, the Government's request for an amendment to the Order of September 29, 1976 will be granted to the extent that the Court now considers the July 6 objection as having been timely interposed; but, for the reasons stated herein, the Government's request for injunctive relief is still due to be denied and the complaint dismissed.

RIVES, Circuit Judge, concurring specially:

I have joined in the separate "Order" because I concur in that part of the Opinion holding that the City of Sheffield is not a "political subdivision" as defined by the Act and its legislative history. I do not concur in that part of the Opinion holding that the Attorney General's *failure* to object to the referendum had the force and effect of *approving* any future changes found desirable for the implementation of the referendum. It seems to me that the Attorney General's letter of May 23, 1975 expressly conditioned his failure to object to the holding of the referendum by stating that the implementation or enforcement of the change in form of government is subject to the pre-clearance requirement of Section 5 of the Voting Rights Act.

### ORDER

This cause came before the Court on the Government's Rule 59 Fed.R.Civ.P. motion for reconsideration and amendment to this Court's Order of September 29, 1976. The Court has considered the motion, briefs of both parties, pleadings, affidavits, and the applicable statutory and case law and in accordance with the Memorandum Opinion filed contemporaneously herewith is of the opinion that the Government's motion is due to be granted to the extent that the Attorney General's July 6 objection was timely interposed, but that the injunctive relief sought is due to be denied and the complaint dismissed.

Accordingly, it is ORDERED, ADJUDGED and DECREED that the Government's Rule 59 motion be and the same hereby is granted and the previous opinion and order of the Court is withdrawn.

Further, it is ORDERED that the Government's application for an injunction be and the same is denied and the complaint is dismissed.

Costs are taxed to the Government.

### ON MOTION FOR RECONSIDERATION

Before RIVES, Circuit Judge, and GROOMS and McFADDEN, District Judges.

### McFADDEN, District Judge.

This cause comes before the Court on the motion of the United States for reconsideration of this Court's December 13, 1976 ruling. The United States filed suit on August 9, 1976 seeking to enjoin the defendants from changing from a Commission to a Mayor-Council form of government. On September 29, 1976 this Court denied relief and dismissed the complaint upon the ground that the Attorney General, pursuant to 42 U.S.C. § 1973c, had failed to interpose a timely objection to the defendants' proposed new form of government. The United States moved for reconsideration, and on December 13 the motion was granted in that the Attorney General's objection was decreed as having been timely filed, but we again denied relief and dismissed the action based on our finding that the City of Sheffield was not a "political subdivision" as defined by the Voting Rights Act and was therefore not subject to the Section 5 pre-

clearance requirements; and on the finding that when the Attorney General approved the referendum to determine whether the City would change to the Mayor-Council government he in effect approved the new form of government.

The Government's contention continues to be that under the circumstances presented[1] Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, is applicable and that defendants have not received federal pre-clearance of the new form of government by either of the two statutorily required methods.

The question presented is whether, in the circumstances of this case, the definition of political subdivision is applicable. We think it is.

The term "political subdivision" shall mean any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting.[2]

The Government contends that Section 5 applies to all changes which affect voting in a covered State, as compared to one not covered, regardless of whether those voting changes are enacted or implemented in a political entity which is outside the definition. Essentially the contention is that "[i]f an entire state is determined to be covered the 'or in any political subdivision' language is not applicable, and the definition of 'political subdivision' has no relevance in determining the Section 5 obligations of the covered state."[3]

In support of its contention the Government refers us to the language of the Act, its legislative history, the Attorney General's consistent interpretation of the Act,

enforcement of the Act by the courts, the fact that Congress has twice extended and amended the Act with knowledge of its interpretation and enforcement, and the actual number of submissions made to the Attorney General under § 1973c.

The pertinent language of the Act and its formal legislative history are in our judgment sufficient to ascertain the clear meaning of the statute.

Section 5 states in pertinent part:

Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title *based upon determinations made under the first sentence of section 1973b(b)* of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964   .   .   .

[Emphasis supplied].

The first sentence of § 1973b(b) triggers the operation of Section 5. It reads in relevant part:[4]

The provisions of subsection (a) of this section shall apply in any State or in any political subdivision of a state which (1) the Attorney General determines   .   . *and with respect to which* (2) the Director of Census determines   .   .   .

[Emphasis supplied].

The State of Alabama was designated by both the Attorney General and the Director of Census under §§ 1973b(b)(1) and (2);[5] therefore, the State of Alabama is clearly subject to Section 5 of the Act. It is also clear that where the State has been designated by both the Attorney General and the Director of the Census, the political subdivisions are also covered by the Act.[6]

---

1. See this Court's Memorandum Opinion, December 13, 1976, for an accounting of the relevant facts.

2. 42 U.S.C. § 1973*l* (c)(2).

3. Brief of plaintiff at 6.

4. The Voting Rights Act is replete with " . . . this section shall apply in any State or any political subdivision of a state which (1) the

Attorney General determines   .   .   . (2) the Director of Census determines   .   .   ."

5. See 30 Fed.Reg. 9897 (August 1, 1965).

6. In our December 13 opinion, at pp. 788–789, we said that *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), "involved the City of Canton, Mississippi, and the [Supreme] Court in a footnote without discussion stated

The formal legislative purpose of § 1973b(b) reads in pertinent part:

> Where an entire State falls within this subsection [§ 1973b(b)(1) and (2)] so does each and every *political subdivision* within that State.[7]

[Emphasis supplied.]

Accordingly, we are still convinced that the term "political subdivision" is relevant and defines the extent of applicability of Section 5 obligations in designated states. We find nothing in the Act, the legislative history,[8] or the cases, which take the Section 5 application beyond that point. It is as clear now as before that the City of Sheffield is not a political subdivision. The City neither registers voters nor supervises their registration. The Colbert County Board of Registrars conducts all voter registration for the City thereby excepting Sheffield from the Act's direct enforcement.[9]

The Government suggests that the term "political subdivision" has meaning only in a State which has not been covered under § 1973b(b)(1) and (2) of the Act, but in which certain political subdivisions thereof have been designated making them subject to Section 5. This argument is in our judgment untenable, and would lead to anomalous results. It would require the application of Section 5 to all political units within a designated State, such as Alabama, notwithstanding their size, function or the fact that none of them register voters. It would permit a court to exempt such political units in an undesignated State or in a State designated by only the Attorney General or the Director, such as New York,[10] even though the political unit involved was within a political subdivision designated by both the Attorney General and Director, or for that matter even if all the political subdivisions of that State had been individually designated by the Attorney General and the Director of Census. This Court simply does not read the language or the underlying legislative intent of the Voting Rights Act as calling for such disparate treatment of political entities.[11]

Accordingly, for the reasons herein set forth, together with those stated in our Memorandum Opinion of December 13, 1976, the Court is of the opinion that plaintiff's motion for reconsideration is due to be denied.

---

that Mississippi and its subdivisions were covered. (400 U.S. 379, n. 2, 91 S.Ct. 431)." Mr. Justice Brennan went on to say however that:
> "In his unreported oral opinion granting temporary relief, he [district judge] *correctly stated:*
> 'The only questions to be decided by . . . the three judge court to be designated, [are] whether or not the *State of Mississippi or any of its political subdivisions* have acted in such a way as to cause or constitute a voting qualification or prerequisite to voting or standard, practice or procedure with respect to voting within the meaning of Section 5 . . . ' "

[Emphasis supplied.]

7. 1965 *U.S. Congressional and Administrative News*, pp. 2456, 2561; see also, Post Trial of pl. at 2.

8. The legislative history makes it doubly clear that 42 U.S.C. § 1973*l*(c)(2) was intended as a restriction on the coverage of the Act. As stated in our December 13, 1976 opinion (p. 788), the pertinent history reads:
> "Clause (2) of this subsection is new. It defines 'political subdivision' as a county or parish *except that in those instances where registration is not conducted under the supervision of a county or parish*, the term includes any other subdivision of a State which conducts registration for voting. *This definition makes clear that the term 'political subdivision' is not intended to encompass precincts, election districts, or other similar units when they are within a county or parish which supervises registration for voting.*"

[Emphasis supplied.]

1965 *U.S.Code Congressional and Administrative News*, p. 2569; see also p. 2464.

9. Title 17, § 21, Code of Alabama (Recomp. 1958); Title 37, § 34(35), Code of Alabama (Cum.Supp.1973).

10. See *United Jewish Organization of Williamsburgh v. Carey,* —— U.S. ——, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977).

11. Even though our holding that the Act is inapplicable makes any further finding unnecessary, the majority of the Court remains of the opinion, assuming the applicability of the Act, that the Attorney General's approval of the referendum constituted approval of the form of government that followed. (See our Memorandum Opinion dated December 13, 1976.)